UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO. 00-6154-CR-DIMITROULEAS

UNITED STATES OF AMERICA,

    Plaintiff,

vs.

JOSEPH ROTUNNO, et al.

    Defendant.

_____/



FILED
AUG - 2 2000
CLARENCE MADDOX
CLERK U.S. DIST. CT.
S.D. OF FLA. FT. LAUD.

### RENEWED MOTION FOR CONTINUANCE; MOTION FOR MEDICAL SEVERANCE; MOTION TO ALLOW THE DEFENDANT TO BE EXAMINED BY HIS REGULAR TREATING PHYSICIANS; AND CERTIFICATION PURSUANT TO LOCAL RULE 88.9

COMES NOW the Defendant, Joseph Rotunno (Rotunno), by and through the undersigned attorney, pursuant to the Sixth Amendment to the United Stats Constitution and Fed.R.Crim.P. 14, and moves the Court to continue the trial date presently scheduled for the two-week period beginning August 7, 2000, to sever his case from his co-defendants, and to allow him to be evaluated, examined and tested by his regular treating physicians. As grounds therefore, Mr. Rotunno states:

1. Mr. Rotunno adopts the grounds raised in his previously filed motions for continuance, which were denied without prejudice.[1]

---

[1] 1. Mr. Rotunno was arraigned on July 7, 2000, regarding a two-year investigation by the government.

2. The government's discovery response, includes over 100 cassette tape recordings containing approximately 1,000 conversations emanating from a court-authorized wire interception, and approximately 41 cassette tape recordings corresponding to consensually recorded conversations.



2. At his pretrial detention hearing before the Magistrate-Judge, Mr. Rotunno apprised the Court and the government of his health problems. James Trezza, M.D., a cardiologist and specialist in internal medicine, is Mr. Rotunno's regular treating physician. Mr. Rotunno suffers from arteriosclerotic heart disease, diabetes, hypertension (high blood pressure) and hyperlipidemia (elevation of fats in the blood stream). He had coronary by-pass surgery and within the past year suffered a stroke. His current medications include Glucophage 300 milligrams twice a day (diabetes), pradin 2 milligrams three times per day (diabetes), norvasc 5 milligrams twice a day (high blood pressure), pravachol 20 milligrams once at bedtime

---

3. On Thursday, July 13, 2000, Mr. Rotunno received copies of some of the tape-recorded conversations consisting of approximately 3,800 pages. As the Court knows from the pre-trial detention hearing, Mr. Rotunno's cellular telephone was the subject of the court-authorized wire interception; so Mr. Rotunno was a party to the approximately 1000 conversations. Plus, Mr. Rotunno was a party to most, if not all, of the consensually recorded conversations.

4. In addition, Mr. Rotunno received the documentation pertaining the court-authorized interception of wire communications.

5. Now that Mr. Rotunno's counsel has received all of these items, he needs to listen to those tapes, and/or review the transcripts. Likewise, Mr. Rotunno, who is pre-trail detained, needs to listen to the tapes and/or review the transcripts. Listening to the tapes and comparing them to the transcripts is difficult because the labels on the tape recordings do not correspond to labels of the transcripts. As an illustration, the transcript may indicate the call occurred on November 1st and was recorded on tape 1A as call number 8; however, the actual tape with that same designation does not contain that particular telephone call. There may be a need to analyze and perhaps prepare corrected or revised transcripts of those tapes. An expert may be required to be retained to analyze the tapes and possibly prepare defense transcripts.

6. Mr. Rotunno anticipates filing numerous motions, including a motion to suppress the wire interceptions, motions for severance, motions to dismiss, and various other motions that cannot be anticipated until after an analysis of the tapes and transcripts are completed.

7. Mr. Rotunno's counsel is preparing for a retrial of a case before Judge Zloch on or about July 31st. Mr. Rotunno's counsel was not the original counsel in that case. Mr. Rotunno's counsel has limited time to devote to his case until the other case is resolved. Mr. Rotunno's counsel is a solo practitioner with no associate attorney, so no other attorney is available to assist in the preparation of his case. Based upon the foregoing, it will be virtually impossible to prepare a case of this magnitude and complexity for trial within the short time allotted between arraignment and trial. The government had two years to prepare its case; Mr. Rotunno needs time to prepare an adequate defense. Mr. Rotunno waives any right to a speedy trial pursuant to 18 U.S.C. §3161 *et seq.*

(cholesterol), and plavix 75 milligrams once a day (artheroscleriois). His treating physician opined that it is imperative that he take these medications and have frequent medical check-ups.

3. At his pretrial detention hearing before this Court, Mr. Rotunno's long-time treating physician, Dr. Trezza, provided the Court more information regarding Mr. Rotunno's health problems. Dr. Trezza advised the Court that he has suffered for a long time from hypertension. He has a past history of renal calculi (stones in the urinary tract) and cholelithiasis (gallstones) with surgical removal. He suffers from peripheral vascular insufficiency (vascular disease of the extremities such as the legs and feet) and has been evaluated for angiography and balloon dilation of the iliac vessels. A prior stress test revealed that one area of his heart was not receiving blood during exercise.

4. Dr. Trezza advised the Court that Mr. Rotunno needs the following diagnostic tests and/or evaluations. He is presently due for a repeat thallium and/or adenosine and/or cardiolite cardiac study. He is due for evaluation of his peripheral vascular insufficiency (blood flow to his legs and feet). He is due for a neurological re-evaluation regarding his stroke. He is due for an evaluation for the present status of his hyperlipidemia (elevation of fats in the blood stream) and diabetes mellitus (blood sugar).

5. To aid the Court in its determination, Mr. Rotunno's medical records have been submitted under seal to the Court and the government; they are not for public consumption. If the Court and the government opine his medical records should be disclosed to the media and/or public-at-large, then he requests the return of any and all copies of his medical records.

6. Since his incarceration, Mr. Rotunno's has experienced health problems. His blood pressure is high. His blood sugar level is high (220). He has suffered dizziness. Regarding his dizziness, Mr. Rotunno advises that he was suppose to undergo an evaluation and/or test

3

regarding the blood flow to his brain (carotidartery). He is experiencing pain and numbness in his legs and feet, which is consistent with peripheral vascular insufficiency. Regarding this lack of blood flow, Mr. Rotunno previously had a device surgically implanted in his legs to assist the blood flow; he is suppose to be re-evaluated if he experiences problems. Mr. Rotunno was previously apprised that if the blood flow in his legs deteriorated that he might have to undergo amputation.

7. Mr. Rotunno has the utmost confidence in his regular treating physicians (Dr. James Trezza, Dr. Jubron A. Hoche, and Dr. Luis Asanza), who have been treating him for years. He wants the aforementioned evaluations and/or tests conducted by these doctors. He will bear the expense of being examined, evaluated and tested by his regular treating physicians, if the Court will order that he be transported to their offices and/or clinics in Broward County (i.e. the situs of his trial). But for, the government's request that he be pretrial detained, he would have access to his regular treating physicians.

8. When he was initially incarcerated, he did not promptly receive his medications. To date, the medical staff at the Federal Detention Center in Miami (FDC) has requested his medical records and advised that it may seek to find a specialist(s) to examine him; however, no arrangements have been made for the re-evaluations and/or tests set forth above. Given the severity of his health problems and the problems he has experienced, while being incarcerated, Mr. Rotunno does not have confidence in the FDC medical staff.

**CERTIFICATION UNDER LOCAL RULE 88.9**

9. Pursuant to Local Rule 88.9, the undersigned previously conferred with Assistant United States Attorney Paul Schwartz who had no objection to continuing the trial. Given the nature of the remainder of his requests, the government does not concur.

**LEGAL ARGUMENT**

Mr. Rotunno renews his motion for continuance. In addition to needing time to prepare his defense, as set forth in his earlier motions, Mr. Rotunno's present health problems have adversely impacted on his ability to prepare his defense. He is pre-occupied with his physical condition and concerns over getting proper medical care.

Mr. Rotunno moves the Court for a medical severance pursuant to the Sixth Amendment to the United States Constitution and Fed.R.Crim.P. 14. Mr. Rotunno asserts that his medical disabilities -- including arteriosclerotic heart disease, a stroke, diabetes, hypertension (high blood pressure) and hyperlipidemia (elevation of fats in the blood stream) and high cholesterol -- require a severance in the instant case.

The decision regarding a medical severance is committed to the sound discretion of the trial court. *Bernstein v. Travia, 495 F.2d 1180, 1182 (2d Cir. 1974)*; *United States v. Knohl, 379 F.2d 427, 437 (2d Cir.)*, cert. denied, *389 U.S. 973, 19 L. Ed. 2d 465, 88 S. Ct. 472 (1967)*. The case setting forth the standards to guide the exercise of that discretion is *United States v. Doran, 328 F. Supp. 1261, 1263 (S.D.N.Y. 1971)*. The Southern District of Florida has applied the *Doran* analysis. *United States v. Goldstein, 633 F.Supp. 424, 427 (S.D. Fla. 1986)*. In *Doran*, the court suggested five factors which should be considered in making that decision: (1) the medical evidence; (2) the defendant's activities "outside the courthouse"; (3) the possibility of measures "to minimize the risks to defendant's health in subjecting him to trial"; (4) "the temporary or permanent character of the physical problem, since postponement is a relatively easy, bearable and obvious measure for the case of curable impairments"; and (5) the "magnitude and seriousness of the case -- i.e., the degree of loss or injury to the public interest deemed to result from delay or total preclusion of a trial." When a colorable claim of medical dangerousness is

5

presented to the court, the court must carefully investigate the situation, assemble the pertinent data, and then consider the medical evidence as well as the defendant's activities inside and outside the courtroom, the steps being taken to improve the defendant's health, and the measures that can be implemented to reduce medical risks.

A multiple-defendant trial increases the number of trial days, because multiple lawyers must cross-examine the government's witnesses, multiple-lawyers must present evidence for their respective clients, and multiple lawyers must give opening and closing arguments. In a joint trial, Mr. Rotunno must endure the stress of sitting through this additional in-court time regarding matters pertaining to other defendants.     Whether a defendant's physical condition is so poor as to require a severance is a difficult determination that carries the responsibility of balancing the unpredictability of the defendant's health against the government's interest in a single, unified trial. A federal criminal trial is by its nature an ordeal for an accused. When the defendant has serious health problems, the stress of the ordeal should not be exaggerated by requiring the defendant to endure a long multi-defendant trial. The stress can be minimized by a specially-structured single trial as set forth below.

In a severed trial, Mr. Rotunno would request: (1) that the trial be held 4 days per week,[2] (2) that the normal trial day be abbreviated to 4-hour sessions,[3] (3) that there be continuous monitoring of his coronary condition, his blood sugar and his blood pressure during trial, (4) that

---

[2] This would give Mr. Rotunno 3 days per week to rest and prepare his case.

[3] Because of his health problems, it is necessary to incarcerate Mr. Rotunno at FDC, which has a medical staff. During trial, Mr. Rotunno will still have to be held at FDC; he cannot be held at the Fort Lauderdale City Jail, because it does not have a medical staff. When defendants are in trial in Fort Lauderdale and incarcerated at FDC, the procedure is to get them up at approximately 5 a.m. to prepare them for transport to Fort Lauderdale. If Mr. Rotunno is in trial until 5 p.m., over 12 hours of his day will be consumed by the trial. If he tried alone, he would request that his travel schedule be adjusted to minimize the amount of time he is in transit.

there be on-the-spot accessibility to medical equipment or medications relating to his medical conditions, (5) that an emergency medical vehicle be parked in the courthouse garage during trial sessions, and (6) that there be at least a licensed physician's assistant, paramedic or registered nurse trained in emergency medicine present in the courtroom during court sessions.

### CONCLUSION

Mr. Rotunno moves that his trial be continued, that he be allowed to be examined, tested and/or evaluated by his regular treating physicians, that his case be severed form his co-defendants, and that the shorter trial day and special medical safeguards discussed above be implemented.

### CERTIFICATE OF SERVICE

I HEREBY CERTIFY that a true and correct copy of the foregoing was delivered by mail and/or faxed this 1st day of August 2000 to:

Paul F. Schwartz, Esq.
Assistant United States Attorney
500 East Broward Boulevard, Suite 700
Fort Lauderdale, FL 33394
(954-356-7336)

Allen Kaufman, Esq.
2900 North Dixie Highway, Suite 201
Oakland Park, FL 33334-2666
(954-563-6813)

William Norris, Esq.
3225 Aviation Avenue, Suite 300
Coconut Grove, FL 33133
(305-285-0699)

Dennis R. Bedard, Edq.
1717 N. Bayshore Drive, Suite 102
Miami, FL 33132
(305-530-9587)

James M. Stark, Esq.
524 S. Andrews Avenue, Suite 304N
Fort Lauderdale, FL 33301
954-768-0738

Martin Bidwell, Esq.
Assistant Federal Public Defender
101 N.E. Third Avenue, Suite 202
Fort Lauderdale, FL 33301
954-356-7556

Simon T. Steckle, Esq.
701 Brickell Avenue, Suite 3260
Miami, FL 33131
305-536-6495

Theodore Klein
800 Brickell Avenue, Penthouse Two
Miami, FL 33131-2944
305-358-4010

Phillip R. Horowitz, Esq.
12651 S. Dixie Highway, Suite 328
Miami, FL 33156
305-232-1963

Raymond Miller, Esq.
400 S.E. Sixth Street
Fort Lauderdale, FL 33301
954-462-8594

John F. Cotrone, Esq.
509 S.E. 9 Street, Suite 1
Fort Lauderdale, FL 33316
954-779-7758

Michael Dutko, Esq.
600 S. Andrews Avenue, Suite 500
Fort Lauderdale, FL 33301
954-764-5040

Thomas D. Sclafani, Esq.
200 E. Broward Boulevard, Suite 1210
Fort Lauderdale, FL 33301
954-524-8590

cr-06154-WPD    Document 251    Entered on FLSD Docket 08/03/2000

Herbert Cohen, Esq.
200 S.E. 6th Street, Suite 205
Fort Lauderdale, FL 33301
(954-766-7969)

R. Michael Hursey, Esq.
305 S. Andrews Avenue, Suite 701
Fort Lauderdale, FL 33301
(954-779-7980)

                H. DOHN WILLIAMS JR., P.A.
                P.O. Box 1722
                Fort Lauderdale, FL 33302
                954-523-5432; 527-5565 (fax)

                By: _____
                      H. Dohn Williams Jr.
                      Fla. Bar # 0166087

e:\clients\rotunno\contiuance.3