UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO. 00-6154-CR-DIMITROULEAS

| | |
|---|---|
| UNITED STATES OF AMERICA ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | |
| ) | |
| JOSEPH ROTUNNO, ) | |
| Defendant. ) | |
| _____) | |

### GOVERNMENT'S RESPONSE TO DEFENDANT ROTUNNO'S MOTION FOR MEDICAL SEVERANCE AND MOTION TO BE EVALUATED BY HIS PERSONAL PHYSICIANS

The United States of America by and through the undersigned Assistant United States Attorney, hereby responds to Defendant Rotunno's motion for a medical severance and motion to be evaluated and treated by his personal physicians.[1]

### FACTS

On June 6, 2000 the Grand Jury returned a six count Indictment charging defendant Joseph Rotunno with conspiring to violate the Racketeer Influenced and Corrupt Organizations Act (RICO) in violation of 18 U.S.C. § 1962(d) (Count 1), conducting an illegal gambling business in violation of 18 U.S.C. § 1955 (Count 2), conspiring to make and collect extortionate extensions of credit in violation of 18 U.S.C. §§ 892 and 894 (Counts 3 & 4), conspiring to

---

[1] Pursuant to the Court's order resetting the August 7 trial date to October 23, the government considers defendant Rotunno's renewed motion for a continuance to be moot and, therefore, does not respond to the request herein.



commit money laundering in violation of 18 U.S.C. § 1956 (Count 5), and conspiring to sell and receive stolen property in violation of 18 U.S.C. § 2315 (Count 6). The substantive offenses enumerated in Counts 2 through 6 of the Indictment also make up the pattern of racketeering activity alleged under the RICO Conspiracy charged in Count 1.

In sum, the Indictment charges that Joseph Rotunno is a known associate of the Colombo Organized Crime Family and on its behalf supervised the Family's South Florida crew and its subsidiary operations. In so doing, Rotunno coordinated the activities of several large-scale gambling businesses in South Florida and arranged for the collection by extortionate means of extensions of credit and gambling losses. To make these collections, Rotunno utilized direct threats of violence, participated himself in acts of physical violence against others, and employed the services of two "muscle-men," defendant Percy "Tiny" Morris and co-conspirator "Funches," to facilitate these collections.

While conducting these illegal activities, Rotunno also maintained an undisclosed ownership interest on behalf of the Colombo Family in the Savoy Club, a restaurant/bar located in Margate, Florida. He participated in the supervision of its daily business activity and often frequented the club from the late evening until the early morning hours. In addition, Rotunno maintained an undisclosed ownership interest in Al's Florist Shop and devoted a large percentage of his time to conducting meetings with co-conspirators on its premises.

Further, shortly following his most recent stroke, from June 1999 through January 2000, Rotunno participated in the operation of a complex white-collar fraud scheme which resulted in a loss to its victims of approximately $21 million collectively. In conducting this fraudulent scheme, Rotunno frequented the PRSI establishment on an almost daily basis for extended hours

2

and was involved in every business decision.[2]

## MEDICAL FACTS

Rotunno alleges that he has been diagnosed with arteriosclerotic heart disease, diabetes, hypertension, and hyperelipidemia, and takes various medications to control the same. As a result of these conditions, Rotunno further asserts that he is in need of the following diagnostic tests: (1) a repeat thallium/adenosine/cardiolite study; (2) an evaluation of his peripheral vascular insufficiency; (3) a neurological re-evaluation; (4) and an evaluation of his hyperelipidemia and diabetes. Based on the need for these tests and his underlying medical condition, Rotunno requests that this Court sever his trial from that of his co-defendants, and in this severed trial put in place certain medical safeguards, including a shortened trial day, monitoring of his condition during the trial, and on-site medical assistance. In support of his request for a severed trial, Rotunno asserts that a multi-defendant trial would increase the number of trial days and thereby prolong the stress of the trial, presumably to his physical detriment. Beyond a severance, Rotunno also requests that the Court permit him to be treated by his regular physicians.

Rotunno, however, has failed to offer medical evidence sufficient to establish the need for a severance or establish that the impending trial poses a substantial danger to his health. The government, therefore, requests that the Court deny his motion.

## DISCUSSION

Whether a defendant's medical condition requires a severance or continuance is committed to the sound discretion of the trial court. Bernstein v. Travia, 495 F.2d 1180, 1182

---

[2]As previously indicated to the Court, the government anticipates superseding the current indictment to include the conduct surrounding the PRSI fraud.

(2d Cir. 1974). In exercising this discretion, a court must assess the degree to which a defendant's health might impair his participation in his defense, especially his right to be present at trial, to testify on his own behalf, and to confront adverse witnesses. United States v. Brown, 821 F.2d 986, 988 (4th Cir. 1987). Among the factors a trial judge may properly consider are the medical evidence, the defendant's activities inside and outside the courtroom, the steps the court can take to reduce the medical risks, the steps the defendant himself is or is not taking to improve his condition, the temporary or permanent character of the physical problem, and the magnitude and seriousness of the case. Id.; see also United States v. Gambino, 809 F.Supp 1061, 1077 (S.D.N.Y 1992); United States v. Goldstein, 633 F.Supp 424, 426-27 (S.D. Florida 1986).

To sustain his motion, a defendant must show that the medical repercussions are serious and out of the ordinary. In short, the impending trial must pose a substantial danger to a defendant's life or health. United States v. Zannino, 895 F.2d 1, 13 (1st Cir. 1990); Brown, 821 F.2d at 988 (citing Latham v. Crofters, Inc., 492 F.2d 913, 915 (4th Cir. 1974; United States v. Daly, 716 F.2d 1499, 1511 (9th Cir. 1983). The fact that the event is by its nature ordealistic cannot abrogate the public interest in bringing those accused of criminal conduct promptly to account. Id.

Here, the defendant asserts that he should be granted a severance from his co-conspirators because a multi-defendant trial necessarily increases the number of trial days, thereby increasing his stress level. In support of this request, however, the defendant has set forth no facts which suggest that his physical condition would in any way impair his ability to participate meaningfully in his defense. Nor has he established that he will be unable to receive

4

the requested medical treatment before the October 23 trial date. Indeed, Dr. Dellgado, the treating physician at the Federal Detention Center in Miami, Florida where Rotunno is housed, has reviewed the medical allegations set forth in Rotunno's motion and assures the government that all of the tests described can be performed through the facilities available to the FDC, if medically necessary.[3] Assuming the tests are medically necessary, they would take approximately two weeks to schedule, a few hours to perform, and approximately 48 hours to analyze.

In addition, we note that the defendant's physical limitations, which have existed throughout the time period charged in the indictment, in no way hampered his ability to supervise and actively participate in the charged RICO enterprise from at least 1997 until the date of his arrest in June 2000. Moreover, the defendant's medical condition is permanent, there is no prognosis for improvement, and Rotunno has offered no medical evidence which would indicate that his condition will worsen as a direct result of the trial, or improve if the Court grants his request for a severance.

Lastly, with the exception of his request for a shorter trial day, none of the special medical safeguards demanded by defendant Rotunno would impact on the proceedings or require that the court take the unusual step of severing the lead defendant from his co-conspirators.[4]

---

[3] Dr. Delgado is currently awaiting the medical records Rotunno alleges would support his medical claims. Letter from Senior Attorney Richard DeAguiar attached hereto.

[4] The government does not object generally to the defendant's request that safeguards be implemented to the extent they are medically necessary. We would note, however, that other than simply setting forth the nature of his condition, the defendant has proffered no evidence that a shorter trial day is medically necessary.

5

Moreover, severing Rotunno from the few co-defendants the government believes will ultimately proceed to trial will not serve to noticeably shorten Rotunno's trial because he acted as the South Florida crew's supervisor and is charged in all counts of the Indictment, thus rendering the vast majority of the evidence the government would seek to introduce relevant to his case.[5] As such, the defendant's request rather than shortening the trial would simply have the net effect of requiring the Court to try the same case twice. The government, therefore, respectfully requests that the court deny defendant's motion for a severance.

The government similarly objects to the defendant's request that he be treated/evaluated by his own physicians because he is more comfortable with those doctors. Since his detention, Rotunno has consulted with Dr. Delgado, the FDC treating physician, approximately 3 times, has been given a chest X-ray, is currently scheduled to undergo a CAT-Scan, and has been afforded all of his medication. Dr. Delgado has also reviewed the medical allegations set forth in Rotunno's motion and has indicated that all of the listed tests can be performed at the facilities available to the FDC, if medically necessary, within the time constraints set forth above. Thus, beyond stating that it is his preference, the defendant has set forth no medical reason why he must be given access to his personal physicians. Accordingly, the government requests that the Court deny Rotunno's motion.

---

[5] In his motion the defendant asserts that he is primarily concerned about a multi-defendant trial because it would require the defendant to sit through the openings and closings of defendants other than his own, as well as other in court matter pertaining to other defendants. The government notes that if this is the defendant's concern, he could waive his right to be present at these ancillary proceedings.

CONCLUSION

For the reasons set forth above, the government respectfully requests that the Court deny defendant's motion for a medical severance and defendant's motion to be treated/evaluated by his personal physicians.

DATED this  7  day of August, 2000

                Respectfully Submitted,

                GUY A. LEWIS
                UNITED STATES ATTORNEY

By: _____
       PAUL F. SCHWARTZ
       Assistant United States Attorney
       Court ID # A5500086
       500 E. Broward Blvd., 7th Floor
       Fort Lauderdale, Florida  33394
       Telephone: (954) 356-7392
       Facsimile: (954) 356-7230

By: _____
       JULIA J. STILLER
       Department of Justice Attorney
       Court ID # A5500485
       500 E. Broward Blvd., Suite 700
       Ft. Lauderdale, Florida
       (954) 987-7255

**CERTIFICATE OF SERVICE**

I HEREBY CERTIFY that a true and correct copy of the foregoing was mailed to the below named on this _____7_ day of August , 2000.

H. Dohn Williams, Esquire
721 N.E. 3rd Avenue
Fort Lauderdale, FL 33304

_____
PAUL F. SCHWARTZ
ASSISTANT UNITED STATES ATTORNEY

**U.S. Department of Justice**

Federal Bureau of Prisons

*Federal Detention Center*

---

*33 NE 4th Street*
*Miami, FL 33132*

August 4, 2000

Paul Schwartz                                            Via Fax: 954-356-7230 / 7336
Assistant U.S. Attorney
500 East Broward Blvd.
Suite 700
Ft. Lauderdale, FL 33394-3002

Re:    Inmate Joseph Rotunno, register number 55368-004

Dear Mr. Schwartz:

Confirming our earlier conversation, I am writing to advise you that I discussed inmate Rotunno's recommended medical tests with the Federal Detention Center's Clinical Director, Dr. Mayra Delgado. Specifically, I asked Dr. Delgado if the government could perform the medical testing recommended in paragraph four of inmate Rotunno's Renewed Motion for Continuance; Motion for Medical Severance; Motion to Allow the Defendant to be Examined by His Regular Treating Physicians; and Certification Pursuant to Local Rule 88.9.

Dr. Delgado informed me that the tests in paragraph four can be performed within two weeks of her order for them. This delay is due to the fact that the testing will likely be done at a local hospital, and thus, an appointment is required. The tests themselves take about one hour and the results would be received within forty-eight hours after their completion.

Unfortunately, Dr. Delgado cannot order the tests recommended in paragraph four without first reviewing inmate Rotunno's medical records. Consequently, she requests that defense counsel forward those records to us so that she may review them and order the tests she determines to be medically necessary.

Please let me know if I may be of further assistance in this matter.

Sincerely,

Richard De Aguiar
Senior Attorney

J:\DEPT\LEGAL\LETTERS\schwartz, paul.wpd