UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO. 00-6154-CR-DIMITROULEAS

UNITED STATES OF AMERICA,

    Plaintiff,

vs.

JOSEPH ROTUNNO, et al

    Defendants.

_____/



NIGHT BOX
FILED

SEP 1 1 2000

CLARENCE MADDOX
CLERK, USDC / SDFL / FTL

## MOTION TO SUPPRESS INTERCEPTION OF WIRE COMMUNICATIONS, INCLUDING LEGAL ARGUMENT

COMES NOW the Defendant, Joseph Rotunno (Mr. Rotunno), by and through the

undersigned attorney, and pursuant to *18 U.S.C. § 2518*,[1] and the Fourth, Fifth, Sixth and

---

[1] *18 U.S.C. § 2518* provides:

(9) The contents of any wire, oral, or electronic communication intercepted pursuant to this chapter [*18 USCS §§ 2510* et seq.] or evidence derived therefrom shall not be received in evidence or otherwise disclosed in any trial, hearing, or other proceeding in a Federal or State court unless each party, not less than ten days before the trial, hearing, or proceeding, has been furnished with a copy of the court order, and accompanying application, under which the interception was authorized or approved. This ten-day period may be waived by the judge if he finds that it was not possible to furnish the party with the above information ten days before the trial, hearing, or proceeding and that the party will not be prejudiced by the delay in receiving such information.

(10) (a) Any aggrieved person in any trial, hearing, or proceeding in or before any court, department, officer, agency, regulatory body, or other authority of the United States, a State, or a political subdivision thereof, may move to suppress the contents of any wire or oral communication intercepted pursuant to this chapter [*18 USCS §§ 2510* et seq.], or evidence derived therefrom, on the grounds that—

    (i) the communication was unlawfully intercepted;
    (ii) the order of authorization or approval under which it was intercepted is insufficient on its face; or



Fourteenth Amendments to the United States Constitution, and moves the Court to suppress any and all interceptions of wire communications and evidence derived therefrom. As grounds therefore Mr. Rotunno states:

### Statement of Facts and Statement of Grounds for Supression

1.    On October 16, 1998, the Honorable Wilkie D. Ferguson, United States District Court Judge, Southern District of Florida, signed an order authorizing the interception of wire communications regarding cellular telephone number (954) 295-6672 (hereinafter referred to as a "wiretap warrant'); Mr. Rotunno was the subscriber. On November 19, 1998, the Honorable Wilkie D. Ferguson signed a wiretap warrant authorizing the continued interception of wire communications for that cellular telephone number.

2.    In July 2000, Mr. Rotunno was indicted. The government never served Mr. Rotunno with an inventory as required by *18 U.S.C. § 2518 (8),(d)*.[2]   Mr. Rotunno's first

-----

(iii) the interception was not made in conformity with the order of
authorization or approval.

Such motion shall be made before the trial, hearing, or proceeding unless there
was no opportunity to make such motion or the person was not aware of the
grounds of the motion. If the motion is granted, the contents of the intercepted
wire or oral communication, or evidence derived therefrom, shall be treated as
having been obtained in violation of this chapter [*18 USCS §§ 2510* et seq.]. The
judge, upon the filing of such motion by the aggrieved person, may in his
discretion make available to the aggrieved person or his counsel for inspection
such portions of the intercepted communication or evidence derived therefrom as
the judge determines to be in the interests of justice.

[2] *18 U.S.C. § 2518 (8), (d)* provides:

(d) Within a reasonable time but not later than ninety days after the filing of an
application for an order of approval under section 2518(7)(b) which is denied or
the termination of the period of an order or extensions thereof, the issuing or
denying judge shall cause to be served, on the persons named in the order or the
application, and such other parties to intercepted communications as the judge

2

notification that he was "an aggrieved party" of a wiretap(s) was when the government moved for his pretrial detention. The government introduced intercepted wire communications in support of its request for his pretrial detention. Mr. Rotunno's pretrial incarceration is substantially and primarily based on intercepted wire communications. The government introduced the intercepted wire communications, notwithstanding that *18 U.S.C. § 2518 (9)* provides, "(t)he contents of any wire...communication intercepted pursuant to this chapter [*18 USCS §§ 2510* et seq.]...shall not be received in evidence or otherwise disclosed in any trial, hearing, or other proceeding in a Federal or State court unless each party, not less than ten days before the trial, hearing, or proceeding, has been furnished with a copy of the court order, and accompanying application, under which the interception was authorized or approved." The Court did not waive this evidentiary predicate. **Mr. Rotunno has already been aggrieved by the government's failure to comply with the procedures set forth in *18 U.S.C. § 2518*, because his pretrial incarceration is predicated upon improperly received evidence.** (emphasis added)

3. The government re-affirmed in its discovery response that it intended to introduce into evidence recorded telephone conversations wherein Mr. Rotunno was a participant that were intercepted pursuant the aforestated wiretap warrant, and wiretap warrant authorizing the continued interception of wire communications. The government provided copies of the

---

may determine in his discretion that is in the interest of justice, an inventory which shall include notice of--

> (1) the fact of the entry of the order or the application;
> (2) the date of the entry and the period of authorized, approved or disapproved interception, or the denial of the application; and
> (3) the fact that during the period wire, oral, or electronic communications were or were not intercepted.

3

application for interception of wire communications, the affidavit in support of the application, and the order authorizing the interception of wire communications for October 16th and November 19th wiretap warrants (all these documents are hereinafter collectively referred to as "wiretap documents"). Mr. Rotunno moved the Court to inspect the original wiretap documents, which Judge Ferguson ordered sealed. The Court, over the government's objection, granted Mr. Rotunno's motion to inspect. On Tuesday, September 6, 2000, the original wiretap documents were inspected. Two sealed envelopes containing the original wiretap documents were produced at the Miami office of the FBI. One envelope contained the original wiretap documents pertaining to the wiretap warrant signed on October 16, 1998; it reflected the envelope had been sealed and unopened since October 16, 1998. The other envelope contained the original wiretap documents pertaining to the extension and/or continuation of the wiretap warrant signed on November 19, 1998; it reflected the envelope had been sealed and unopened since November 19, 1998. The irregularities and/or defects in the original wiretap documents will be discussed later in the motion. (emphasis added)

4.    Every wiretap warrant, including continuations thereof, provides that the interception "must terminate upon attainment of the authorized objective." In this case, wiretap warrant, including the continuation thereof, contains a provision that the prosecutor shall provide Judge Ferguson periodic reports on the tenth, twentieth and thirtieth days of the intercept period "showing what progress has been made toward achievement of the authorized objective."[3] **On**

---

[3] *18 U.S.C. § 2518* provides:

(5)...Every order and extension thereof shall contain a provision that the authorization to intercept shall be executed as soon as practicable, shall be conducted in such a way as to minimize the interception of communications not otherwise subject to interception under this chapter [*18 USCS §§ 2510* et seq.],

4

**Tuesday September 6, 2000, Mr. Rotunno requested copies of the progress reports. The government refused to provide the progress reports claiming they are work product.** (emphasis added)

5.      Every interception of wire communications "shall be conducted in such a way as to minimize the interception of communications not otherwise subject to interception under this chapter [*18 USCS §§ 2510* et seq.]." *18 U.S.C. § 2518(5)*. Generally, during the interception, the government maintains a chronological log or listing of all the calls made from, or received by the telephone that is the subject of the interception (hereinafter referred to as "logs"). These logs include notations regarding the time, date, duration and subject matter of the conversation. If the conversation is a non-relevant call, or a call not subject to interception (i.e. such as a privileged communication with an attorney), the log reflects the call was minimized and not recorded. The government has not provided any logs and/or proof of minimization.

6.      The grounds for the suppression of the evidence derived from the wiretap warrant, including the continuation thereof, which will require an evidentiary hearing, are:

(1)      the United States Attorney for the Southern District of Florida did not provide Judge Ferguson with legally sufficient proof that it was authorized to apply for a wiretap warrant, including the extension thereof;

---

and must terminate upon attainment of the authorized objective, or in any event in thirty days...

(6) Whenever an order authorizing interception is entered pursuant to this chapter [*18 USCS §§ 2510* et seq.], the order may require reports to be made to the judge who issued the order showing what progress has been made toward achievement of the authorized objective and the need for continued interception. Such reports shall be made at such intervals as the judge may require.

5

(2)    the probable cause was insufficient to obtain a wiretap warrant to investigate illegal gambling;

(3)    the application for the wiretap warrant, including the continuation thereof, did not adequately establish why normal investigative procedures have failed, or why normal investigative techniques were unlikely to succeed;

(4)    the interception of wire communications, including the continuation thereof, did not promptly terminate upon attainment of the authorized objective;

(5)    the probable cause for the October 16th wiretap warrant was "stale;"

(6)    government did not properly "minimize' the interception of wire communications.

## Legal Argument

### Standard of Review to be Applied in a
### Motion to Suppress the Interception of Wire Communications

An interception of wire communications obtained through *18 U.S.C. § 2510 et seq.* (hereinafter referred to as "Title III") is considerably different than a traditional search warrant application. First, an interception of wire communications is a far more intrusive invasion of privacy, and not only invades the privacy of the target of the investigation, but also of other individuals who may contact the individual under investigation. Unlike an individual who is the subject of a conventional search, one who is affected by an interception of wire communications does not immediately know of the intrusion. This electronic intrusion is always secret, and may never be made known to the individual if the investigation is unfruitful. In a traditional search, the subject knows immediately that his premises are being invaded and what possessions are being seized, or shortly thereafter he is aware of the fact if it occurs at a time when he is not present at his residence.

6

An interception of wire communications is of a longer duration, more extensive into the privacy and affects more individuals. See *United States v. Santora, 583 F.2d 453, 462-63 n.6 (9th Cir. 1978)*. The legislative history of Title III reflects there were numerous legislative attempts to restrict the interception of wire communications. One proposal before Congress would have entirely banned all types of wiretapping at both the state and federal levels, except for national security investigations. Title III was a compromise and specifically limited wiretapping. It entrusted initial authorization to the Attorney General, and then required court approval. Thirty days was set as the maximum period of the intercept, though an extension may be sought.

Evidence obtained in violation of Title III must be prohibited and cannot be lightly considered. Because of the extensive intrusion of an interception of wire communications, the authorization and applications must be strictly construed. To ensure that there are proper investigative motives, Title III must be strictly construed in favor of the public at large, and against the applicant (government). *Gelbard v. United States, 408 U.S. 41, 92 S.Ct. 2357, 33 L.Ed.2d 179 (1972)*.

The Supreme Court has explained that "suppression is not mandated for every violation of Title III, but only if 'disclosure' of the contents of intercepted communications, or derivative evidence, would be in violation of Title III." In particular, communications are only unlawfully intercepted and suppression mandated "where there is failure to satisfy any of those statutory requirements that directly and substantially implement the congressional intention to limit the use of intercept procedures to those situations clearly calling for the employment of this extraordinary investigative device." *United States v. Chavez, 416 U.S. 562, 575 (1974)*.

The "four corners" rule is a well-established precept of judicial review. It derives from the observation of the Supreme Court, in *Aguilar v. Texas, 378 U.S. 108, 109 n. 1, 84 S.Ct. 1509, 1511 n. 1, 12 L. Ed. 2d 723 (1964)*, that "it is elementary that in passing on the validity of a warrant, the reviewing court may consider only information brought to the magistrate's attention" -- that is, within the four corners of the warrant application. Thus, the "four corners" of an application for a wiretap warrant must establish that the government has complied with the statutory requirements, or satisfied the statutory predicate for obtaining a wiretap warrant.

### Authorization per *18 U.S.C. § 2516*

Title III provides that an interception of wire communications must be specifically authorized by specifically enumerated official with the United States Department of Justice:

(1) The Attorney General, Deputy Attorney General, Associate Attorney General, or any Assistant Attorney General, any acting Assistant Attorney General, or any Deputy Assistant Attorney General or acting Deputy Assistant Attorney General in the Criminal Division specially designated by the Attorney General, may authorize an application to a Federal judge of competent jurisdiction for, and such judge may grant in conformity with section 2518 of this chapter an order authorizing or approving the interception of wire or oral communications by the Federal Bureau of Investigation, or a Federal agency having responsibility for the investigation of the offense as to which the application is made, when such interception may provide or has provided evidence of ...(specifically enumerated offenses). *18 U.S.C. § 2516*

Attorney General Janet Reno has implemented *18 U.S.C. § 2516* by designating that the Attorney General and/or certain designated officials within the Department of Justice must authorize all applications for wire interceptions. Besides the Attorney General, Deputy Attorney General and Associate Attorney General, the persons designated to authorize an interception of wire communications are the Assistant Attorney General in charge of the Criminal Division, any Acting Assistant Attorney General in charge of the Criminal Division, any Deputy Assistant

8

Attorney General of the Criminal Division, and any Acting Deputy Assistant Attorney General of the Criminal Division. *Attorney General Order no. 1950-95.*

**The unsealing of the original wiretap documents revealed that the application for the wiretap warrant presented to Judge Ferguson on October 16, 1998, did not contain proof that one of the enumerated officials authorized the application for the wiretap warrant.** Judge Ferguson was presented *Attorney General Order no. 1950-95*, which enumerated the persons authorized to approve an application for a wiretap warrant. Judge Ferguson was presented a photocopy, not the original, of an authorization memorandum dated October 15th approving the interception of Mr. Rotunno's cellular telephone number. It was purportedly signed by **"Frederick D. Hess, Director Office of Enforcement Operations."** **The authorization memorandum was not personally signed by Frederick Hess; instead his signature was signed by someone else, who then placed her initials next to the signature indicating that she had signed the authorization memorandum for Frederick Hess.[4] Even if**

---

[4] Before the unsealing of the original wiretap documents, the government attempted to mislead Mr. Rotunno into believing that Judge Ferguson was presented a memorandum approving the interception of wire communications signed by a person specifically authorized to approve interceptions of wire communications. In a subsequent discovery reply, the government sent Mr. Rotunno the aforstated memorandum with a cover letter that this was a "missing page" giving the impression that there was photocopying omission in the wiretap documents previously supplied to Mr. Rotunno. The cover letter did not state that this missing page was not presented to Judge Ferguson; it did not state that the "missing page" was not appended to the original wiretap documents. **After sending this cover letter with the "missing page," the government objected to the unsealing and inspection of the original wiretap documents.**

While the "missing page" appears to be from an official designated to approve an interception of wire communications, there are glaring irregularities. **It was not signed by the purported author of the memorandum, James K. Robinson. It was not signed by anyone. Some unidentified third party affixed the rubber stamp signature of another official. The face of the "missing page" reflects that some unidentified person after the close of the regular business day affixed the official's rubber stamped signature when the official was out of the office.** (emphasis added)

9

**he had signed his own name, Mr. Hess is not authorized to approve an application for a wiretap warrant.** (emphasis added)

The unsealing of the original wiretap documents revealed irregularities in the application for the continued interception of wire communications presented to Judge Ferguson on November 19, 1998. Judge Ferguson was presented *Attorney General Order no. 1950-95*, which enumerated the persons authorized to approve an interception of wire communications. Judge Ferguson was presented a photocopy, not the original, of an authorization memorandum dated November 18th approving the continued interception of Mr. Rotunno's cellular telephone number. **The authorization memorandum was purportedly authored by James K. Robinson, a person authorized to approve an application for a wiretap warrant. However, the author, Mr. Robinson, did not sign it; instead some unidentified third party affixed the rubber signature stamp of another official. The face of the authorization memorandum reflects that some unidentified third party, after the close of the regular business day, affixed some other official's "rubber stamp signature" when the official was out of the office.** (emphasis added)

In *United States v. Giordano, 416 U.S. 505, 94 S.Ct. 1820, 40 L.Ed.2d 341 (1974)*, the Supreme Court held that Title III strictly limits the category of public officials who may authorize an application of the interception of wire communications to the Attorney General and Assistant Attorneys General specially designated by him. In holding that no other Justice Department official could approve wiretaps, the Court held that the government's failure to obtain authorization for the wiretap application from one of the statutorily designated officials under *18 U.S.C.S 2516(1)* required suppression of the evidence secured by the wire interceptions. "We are confident that the provision for pre-application approval was intended to play a central

role in the statutory scheme and that suppression must follow when it is shown that this statutory requirement has been ignored." *Id.416 U.S. at 528, 94 S. Ct. at 1832.*

Authorization, in accord with *18 U.S.C. § 2516*, is an essential step in obtaining a wiretap warrant. It is not some mere ministerial process. The authorization memorandum must be included as part of the application for the wiretap warrant, so the judge, as a neutral magistrate, can determine that the law enforcement official seeking the wiretap warrant has authorization to do so. The "four corners" of the application for the October 16th wiretap warrant, reflect that the night before the wiretap warrant was signed, the government was scrambling to complete its application to present to Judge Ferguson early the next morning (i.e. sometime before 8:30 a.m.). **Judge Ferguson was presented a wiretap application that contained an authorization memorandum from a Department of Justice official, who was not authorized to approve an application for wiretap warrant.[5]** (emphasis added)

Based on the "four corners" of the application, Judge Ferguson could not have fulfilled his obligation, as a neutral magistrate, and concluded that United States Attorney for the Southern District of Florida had authorization to obtain a wiretap warrant. Title III is strictly construed in favor of the public at large, and against the government. Suppression is mandated where the application for the wiretap warrant fails to satisfy the statutory requirement of *18 U.S.C. § 2516* by informing the Judge that the wiretap has been authorized as required by law.

The wiretap warrant signed November 19th is the "fruit of the poisonous tree." The probable cause for wiretap warrant dated November 19th was derived from evidence obtained by virtue of the wiretap warrant signed October 16th.

---

[5] Frederick Hess is not authorized by statute or by Attorney General Reno's order to authorize an application for a wiretap order. (emphasis added)

11

Regarding the wiretap warrant signed November 19, 1998, Judge Ferguson was presented a photocopy, not the original, of an authorization memorandum dated November 18th approving the continued interception of Mr. Rotunno's cellular telephone number. **James K. Robinson, a person authorized to approve the interception of wire communications, purportedly authored the authorization memorandum. However, the author did not sign it; instead some unidentified third party affixed the "rubber signature stamp" of another official. The face of the authorization memorandum reflects that some unidentified third party, after the close of the regular business day, affixed some other official's "rubber stamp signature" when the official was out of the office.[6]**

In *United States v. Laff, 365 F. Supp. 737 (S.D. Fla. 1973)*, this Court dealt with the situation of a third-party signing or initialing a wiretap authorization memorandum. The government's authorization memorandum bore the Attorney General's initials. The Attorney General's executive assistant placed the Attorney General's initials on the authorization memorandum. The executive assistant claimed that he had the Attorney General's oral authorization to sign his initials. This Court, in rejecting that argument, wrote:

> **The fact that (the executive assistant) testified that he acted in the instant case under oral instructions by (the Attorney General) after a long-distance telephone conference with the Attorney General, could not serve to make proper an authorization any more than could a judge's oral instructions to the clerk of the court to sign his name to an Interception Order make that a valid order.** *Id at 740.* (emphasis added)

Compare in our case, some unidentified third party affixed a "rubber stamp signature" of a person authorized to approve an application for a wiretap warrant. It must be presumed that the unidentified third party could not approve an application for a wiretap warrant; otherwise, the

---

[6] Logic dictates that if the person represented by the "rubber signature stamp" was in the office, he would have personally signed a document of this importance and significance.

12

third-party would have signed their own name. This Court in *Laff* specifically rejected the concept of an unauthorized person signing for an authorized person. The motion to suppress the November 19th wiretap warrant should be granted, without even the necessity of an evidentiary hearing. The best testimony the third party could give is that she was authorized or directed to affix the "rubber stamp signature" of the authorized person in the authorized person's absence.

The courts have disapproved a third party affixing a substitute signature for the attorney who was supposed to sign a document. In a case presently pending before this Court, this Court has disallowed a paralegal signing his employing attorney's name after he was authorized and directed to do so. In that case, the employing attorney approved a pleading that was to be filed in a civil case. The pleading needed to be filed. Because he was away from, or out of the office, after he approved the pleading, he authorized and directed his paralegal to sign his name. This Court found that this conduct violated Rule 11, which provides that pleadings must be signed by an attorney of record. See *John Martin v. Automobili Lamborghini Exclusive, Inc., et al, case no. 98-6621-Civ-Dimitrouleaus, United States District Court, Southern District of Florida*.

In another case in the Southern District of Florida involving the same attorney, the District Court Judge found that it was improper and that it violated Rule 11 for secretary to sign her employing attorney's name to a pleading and to place her initials after the signature indicating that she signed his name. In that case, the attorney drafted and approved a civil complaint. He directed his office to file the lawsuit. When the secretary got to the Clerk's Office, she realized the attorney forgot to sign the complaint. The secretary, with the deputy clerk's knowledge and consent, signed her boss' name and placed her initials next to the signature indicating that she had signed his name. The attorney was sanctioned for this conduct.

13

In *Kobleur v. Group Hospitalization and Medical Services, Inc. 787 F.Supp. 1444 (S.D. Ga. 1991)*, the attorney of record did not sign several pleadings. Instead, a third party, whose name appeared to be A.M. Hodge signed the name of the attorney by signing the attorney's name and appending "by A.M. Hodge" or "by AMH" to the signature. The court found that this substitute signature procedure violated Rule 11, Fed.R.Civ.P., which provides, "(e)very pleading, motion, and other paper of a party represented by an attorney shall be signed by at least one attorney of record in the attorney's individual name, whose address shall be stated." The court found that this procedure was a clear violation of a simple rule. "Pleadings must be signed by an attorney of record in the case. Period. These pleadings were not." *Id at 1453*. The court fined the attorney and the person he authorized and directed to sign his name.

Rule 11 provides that an <u>unsigned</u> pleading is a nullity. A pleading signed by a person, who is <u>not</u> the attorney of record, is the same thing as an unsigned pleading. It is a nullity until a proper signature is affixed. Likewise, a wiretap authorization memorandum signed by a third party, who is not authorized to approve an application for a wiretap, is a nullity.

In conclusion, the *Laff* court opined that it was improper for a third party to sign for an authorized person. Courts have opined that a third party signing a routine civil pleading, with the attorney's approval and at the attorney's direction, is prohibited. The practice of a third party affixing a substitute signature on an official court related document is prohibited. An application authorizing a wiretap warrant can only be approved by a handful of people in Washington, D.C. Logically, one of these designated persons must personally affix their signature. Just like the court noted in *Laff*, a judge cannot delegate the task of signing a wiretap warrant. Thus, even if this Court opines that there is no fatal defect in the authorization process for the October 16th

14

wiretap warrant, the application process for the November 18th wiretap warrant is fatally flawed.

Any intercepted conversations and any derivative evidence must be suppressed.

### *18 U.S.C. § 1955*

Federal law does not prohibit all gambling. A wiretap warrant maybe obtained to investigate illegal gambling, if the probable cause affidavit meets the specific statutory criteria set forth in *18 U.S.C. § 1955*. Section 1955 provides:

> If five or more persons conduct, finance, manage, supervise, direct, or own all or part of a gambling business and such business operates for two or more successive days, then, for the purpose of obtaining warrants for...**interceptions**...probable cause that the business receives gross revenue in excess of $ 2,000 in any single day shall be deemed to have been established. (emphasis added)

To get a wiretap warrant for conversations relating to illegal gambling, the probable cause affidavit must show (1) that five or more persons are conducting, financing, managing, supervising, directing or owning all or part of a gambling business, (2) that the business has operated for two or more days, and (3) that the gambling business received gross revenue in excess of $2000 in any single day.

In our case, the "four corners" of the affidavit does not show that Mr. Rotunno together with four other persons was conducting an illegal gambling operation. The government received information from five (5) informants. The threshold requirement that the gambling business have five (5) or more participants must exclude informants. Otherwise, a single person accepting a $10 bet could be indicted for violating *18 U.S.C. § 1995* if he was involved in gambling with four (4) informants for two (2) successive days, and the informants, amongst themselves, on a single day bet $2000. This would be an absurd result. The five (5) persons must be part of the criminal milieu, not government agents.

15

The probable cause affidavit for the October 16th wiretap warrant is based upon interviews with five (5) informants, including recorded conversations between these informants and targets of the investigation.[7] Regarding illegal gambling, Informant #1 provided information: (1) that Mr. Rotunno participates in several illegal gambling business by collecting losses from bettors, (2) that Mr. Rotunno extends credit to bettors, (3) that Mr. Rotunno uses the cellular telephone to discuss illegal gambling, and (4) that Mr. Rotunno receives $2000 per week from his controlling interest in two (2) gambling businesses.[8]

Regarding illegal gambling, Informant #2 provided the following information: Mr. Rotunno told the informant that he and other members and associates of organized crime families are receiving money from illegal gambling activities.[9]

Regarding illegal gambling, Informant #3 provided information: (1) that Mr. Rotunno, Mr. Scarola and the Informant were involved in a wholesale car business; (2) that the Informant was placing bets with Mr. Scarola's bookmaking operation; (3) that Mr. Scarola referred the Informant to a separate bookmaking business operated by Mr. Polito; (4) that Mr. Rotunno agreed to loan the Informant money for his wholesale car business; (5) that instead of using the money he borrowed from Mr. Rotunno for the wholesale car business, the Informant gambled the money away with Mr. Scarola and Mr. Polito; and (6) that the Informant had numerous conversations with Mr. Rotunno about the wholesale car business and the gambling debt he owed Mr. Scarola and Mr. Polito.[10]

---

[7] The probable cause begins at page 14 of the affidavit.

[8] Paragraphs 25-32 of the probable cause affidavit.

[9] Paragraphs 32-38 of the probable cause affidavit.

[10] Paragraphs 39-45 of the probable cause affidavit.

16

Regarding illegal gambling, Informant #4 provided information: (1) that the Informant engaged in consentually monitored conversations with Mr. Rotunno wherein illegal gambling was discussed; (2) that Mr. Rotunno collected gambling losses from Mr. Polito's bettors; (3) that the Informant told Mr. Polito that he had a number of bettors, approximately 20, to refer to him; and (4) that Mr. Polito and Mr. Rotunno told the Informant that he was responsible for unpaid gambling losses incurred by his bettors.[11]

Regarding illegal gambling, Informant #5 provided information that would be considered "stale." Informant #5 died approximately 120 days before the government sought and obtained the October 16th wiretap warrant. Notwithstanding that his information was "stale," Informant #5 provided information: (1) that he began participating with Mr. Capri in illegal gambling activities in 1997; (2) that the Informant operated his own illegal gambling business and he referred bettors, who wanted to make large bets, to Mr. Capri; (3) that some of the bettors that the Informant referred to Mr. Capri failed to pay their losses; (4) that Mr. Capri and Mr. Rotunno told the Informant that he was responsible for the payment of the unpaid losses; (5) that there were a number of consentually recorded conversations between the Informant and Mr. Rotunno, and the Informant and Mr. Capri about these unpaid gambling losses; and (6) that the Informant met with Mr. Capri, Mr. Polito and Mr. Rotunno to discuss these unpaid gambling losses.[12]

Because of the extensive intrusion of an interception of wire communications, the authorization and applications are strictly construed in favor of the accused and against the government. Applying this standard, the probable cause affidavit states: (1) that according to Informant #1 Mr. Rotunno is involved in, or has a controlling interest in two (2) gambling

---

[11] Paragraphs 46-49 of the probable cause affidavit.

[12] Paragraphs 50-58 of the probable cause affidavit.

17

businesses; (2) that Informant #2 said that Mr. Rotunno and members of organized crime were making money from illegal gambling operations; (3) that Informant #3 was involved in a wholesale car business with Mr. Rotunno and that he used money Mr. Rotunno loaned him for the business to gamble with Mr. Scarola and Mr. Polito; (4) that Informant #4 said bettors placed bets with Mr. Polito and that Mr. Rotunno collected the losses; and (5) that Informant #5 said that over 120 days before the wiretap warrant was obtained that he referred bettors to Mr. Capri, and that when his bettors did not pay that Mr. Capri and Mr. Rotunno held him responsible for their gambling debts. According the probable cause affidavit, Mr. Scarola and Mr. Rotunno were linked together in a wholesale car business in which Mr. Scarola was stealing money from Mr. Rotunno; Mr. Scarola and Informant #3 were linked together doing business behind Mr. Rotunno's back; **but Mr. Scarola and Mr. Rotunno were not linked together in an illegal gambling business.** (emphasis added)

The application for the wiretap warrant must the identity the persons, if known, whose communications will be intercepted. Both the application for the wiretap and the probable cause affidavit enumerate the persons, who may be intercepted, as Mr. Rotunno, Mr. Polito, Mr. Capri, Mr. Scarola, Mr. Mandel and Mr. Maragni.   **While Mr. Mandel and Mr. Maragni are identified as persons who may be intercepted, the five (5) informants did not implicate them in Mr. Rotunno's illegal gambling activities.** Mr. Maragini was characterized as an organized crime figure whose last arrest and conviction was fourteen (14) years ago; **his prior arrest record did not relate to illegal gambling.** Mr. Mandel had no criminal record;[13] he owned a popular sports bar, where patrons, including Mr. Rotunno and Mr. Polito watched

---

[13] Mr. Mandel could not be a convicted felon and hold a Florida liquor license. Mr. Mandel had to undergo a background and fitness investigation to qualify for a Florida liquor license.

18

sporting events; and during a 32-week period, Mr. Rotunno placed an average of 3 telephone calls per week to this public establishment. (emphasis added)

Excluding the Informants, who are government agents, the probable cause affidavit linked Mr. Rotunno with Mr. Polito and Mr. Capri in illegal gambling activity. Section 1955 requires that the probable cause establish that five or more persons were jointly conducting, financing, managing, supervising, directing or owning all or part of a gambling business. The gambling statute is the only substantive statute with its own specifically enumerated probable cause requirement for obtaining a wiretap warrant. Within the "four corners" of the probable cause affidavit, there are not specific facts that Mr. Rotunno, together with four other persons, was conducting an illegal gambling operation. As such, there was insufficient probable cause, or an insufficient predicate for the issuance of a wiretap warrant to investigate illegal gambling. Any and all evidence derived from the October 16th wiretap warrant must be suppressed. Or, in the alternative, if the court determines there was probable cause to investigate the other enumerated crimes, any and all conversations relating to illegal gambling must be suppressed, as well as any evidence derived from those conversations.

## Other Investigative Techniques

Each application for a wiretap warrant must include, "a full and complete statement as to whether or not other investigative procedures have been tried and failed or why they reasonably appear to be unlikely to succeed if tried or to be too dangerous." *18 U.S.C. § 2518(1)*.

The probable cause affidavit for the October 16th wiretap warrant is based upon interviews with five (5) informants, including recorded conversations between these informants

and targets of the investigation.[14] Informant #5 died 120 days before the wiretap warrant was obtained, so his consideration as a live, in-court witness was a moot point.

Regarding criminal activity, Informant #1 provided general background information, as opposed to specific information about a crime being presently committed. He was unwilling to testify. Regarding criminal activity, Informant #2 also provided general background information, as opposed to specific information about a crime being presently committed. He was unwilling to testify. **Thus, within the "four corners" of the affidavit, the two (2) informants who did not want to testify did not provide specific information about crimes being presently committed.** (emphasis added)

**Conversely the two (2) Informants with the most specific information about present criminal activity were willing to testify.** Regarding criminal activity, Informant #3 provided information: (1) that Mr. Rotunno, Mr. Scarola and the Informant were involved in a wholesale car business; (2) that the Informant was placing bets with Mr. Scarola's bookmaking operation; (3) that Mr. Scarola referred the Informant to a separate bookmaking business operated by Mr. Polito; (4) that Mr. Rotuno agreed to loan the Informant money for his wholesale car business; (5) that instead of using the money he borrowed from Mr. Rotunno for the wholesale car business, the Informant gambled the money away with Mr. Scarola and Mr. Polito; (6) that the Informant had numerous conversations with Mr. Rotunno about the wholesale car business and the gambling debt he owed Mr. Scarola and Mr. Polito; and (7) that the Informant traveled to New York with Mr. Scarola and was able to infiltrate Mr. Scarola's organized crime group.[15] Informant #3, who was an FBI informant for six (6) months before the wiretap warrant was

---

[14] The probable cause begins at page 14 of the affidavit.

[15] Paragraphs 39-45 of the probable cause affidavit.

20

obtained, was engaged in face-to-face business with Mr. Rotunno, and he was willing to testify about it. (emphasis added)

Regarding criminal activity, Informant #4 provided information: (1) that the Informant engaged in consentually monitored conversations with Mr. Rotunno wherein illegal gambling was discussed; (2) that Mr. Rotunno collected gambling losses from Mr. Polito's bettors; (3) that the Informant told Mr. Polito that he had a number of bettors, approximately 20, to refer to him; (4) that regarding his bettors the Informant could act as the collector from the losing bettors; and (5) that Mr. Polito and Mr. Rotunno told the Informant that he was responsible for unpaid gambling losses incurred by his bettors.[16] Informant #4, who was an FBI informant for over a year before the wiretap warrant was obtained, was doing face-to-face business with Mr. Rotunno, and he was willing to testify about it.

In conclusion, the face of the probable cause establishes doubt that a wiretap warrant was needed, because the government had two (2) Informants inside the gambling operation. The Court should hold an evidentiary hearing on this issue.

## Duration of the Wiretap(s)

Title III provides that "(e)very order and extension thereof shall contain a provision that the authorization to intercept... must terminate upon attainment of the authorized objective, or in any event in thirty days. *18 U.S.C. § 2518.* In this case, wiretap warrant, including the continuation thereof, contains a provision that the prosecutor shall provide Judge Ferguson periodic reports on the tenth, twentieth and thirtieth days of the intercept period "showing what progress has been made toward achievement of the authorized objective."[17] **On Tuesday**

---

[16] Paragraphs 46-49 of the probable cause affidavit.

[17] *18 U.S.C. § 2518* provides:

21

**September 6, 2000, Mr. Rotunno requested copies of the progress reports. The government**
**refused to provide the progress reports claiming they are work product.** Mr. Rotunno has
been denied factual information relating to whether the October 16th wiretap should have
terminated in less than thirty (30) days, because the government had attained the authorized
objective. Mr. Rotunno has been denied factual information relating to whether the October 16th
wiretap should have been extended, because the government had attained the authorized
objective. Mr. Rotunno has been denied factual information relating to whether the November
19th extension of the wiretap should have been terminated in less than thirty (30) days, because
the government had attained the authorized objective. This Court should order disclosure of the
documents, and allow Mr. Rotunno to supplement his motion on this issue if he deems it
appropriate. (emphasis added)

The probable cause affidavit for the November 19th wiretap warrant is what prompted this
request for additional information. As probable cause for the continuation of the initial wiretap,
the government chronicled fifty (50) intercepted telephone conversations.[18] The telephone
conversations involved Mr. Rotunno, Mr. Polito, Mr. Capri, Mr. Caskill, Mr. Halpern, Mr.

---

(5)...Every order and extension thereof shall contain a provision that the
authorization to intercept shall be executed as soon as practicable, shall be
conducted in such a way as to minimize the interception of communications not
otherwise subject to interception under this chapter [*18 USCS §§ 2510* et seq.],
and must terminate upon attainment of the authorized objective, or in any event in
thirty days...

(6) Whenever an order authorizing interception is entered pursuant to this chapter
[*18 USCS §§ 2510* et seq.], the order may require reports to be made to the judge
who issued the order showing what progress has been made toward achievement
of the authorized objective and the need for continued interception. Such reports
shall be made at such intervals as the judge may require.

[18] Paragraphs 34-84 of the affidavit in support of a continuation of the wiretap.

22

Pierce, Mr. Braeske, Mr. Miller, Mr. Mamone, Mr. Morris, Mr. LaPolla, Mr. Steinhart, and Mr. Ruiz. The government opined that these telephone calls concerned illegal gambling, losses by the bettors, collection of losses from the bettors, debts incurred by the bettors on account of their losses, the conversion of the gambling debts into extortionate extensions of credit, collection of the extortionate extensions of credit, and cashing checks received from bettors to pay for their losses (i.e. money laundering). In other words, these telephone conversations concerned the subject matter of the charges that were brought against Mr. Rotunno and his co-defendants.

A review of just the selected conversations set forth in the probable cause affidavit for the November 19th wiretap warrant, reveals that the government attained its authorized objective within the first thirty (30) days. After the first thirty (30) days, the government had intercepted all the persons charged in the Indictment with illegal gambling activity; it had sufficient proof to bring charges. The progress reports will substantiate that the government attained its objective within the first thirty (30) days. Thus, there was no need for the continuation of the wiretap. Any intercepted conversations obtain as a result of the November 19th wiretap warrant should be suppressed, including any evidence derived therefrom.

**Minimization**

Every interception of wire communications "shall be conducted in such a way as to minimize the interception of communications not otherwise subject to interception under this chapter [18 USCS §§ 2510 et seq.]." 18 U.S.C. § 2518(5). Generally, during the interception, the government maintains a chronological log or listing of all the calls made from, or received by the telephone that is the subject of the interception (hereinafter referred to as "logs"). These logs include notations regarding the time, date, duration and subject matter of the conversation. If the conversation is a non-relevant call, or a call not subject to interception (i.e. such as a privileged

23

communication with an attorney), the log reflects the call was minimized and not recorded. The government has not provided any logs and/or proof of minimization.

However, from the discovery provided, it appears that the government did not minimize the interception of communications. Given the volume of the tape recorded conversations and the content of those conversations, it appears that the government recorded everything. For example the probable cause affidavit regarding the November 19th wiretap warrant contains three (3) examples of a lack of minimization. An October 19th telephone conversation between Mr. Rotunno and his girlfriend was recorded. They discussed his deposition given in his bankruptcy case. There was no conversation about any of the enumerated crimes for which the wiretap was obtained. An October 20th telephone conversation between Mr. Rotunno and his nephew, who was assigned to a halfway house, was recorded. They talked about meeting at a later time. There was no conversation about criminal activity. An October 27th telephone conversation between Mr. Rotunno and his nephew was recorded. There was conversation about getting together for breakfast or lunch. There was conversation about speaking with some unidentified guy and doing him a favor, which the FBI somehow opined meant that the nephew was attempting to collect a payment regarding an illegal loan.

Assuming the points raised above are not fatal, the Court should hold a minimization inquiry.

## Staleness

The probable cause for the October 16th wiretap warrant is substantially predicated on consentually recorded conversations by the informants. The transcripts of those conversations are not appended to the probable cause affidavit. Rather, the government has interpreted or paraphrased what was discussed during the conversation. Mr. Rotunno's co-defendant has made

24

repeated requests for copies of the transcripts of these probable cause conversations. The government has repeatedly promised to provide these transcripts, but has not provided them. Mr. Rotunno and his co-defendant want these transcripts, so that they can be analyzed for a *Franks v. Delaware* violation. In the past when the government has resisted requests for discovery, the resisted discovery bore fruit for Mr. Rotunno and his co-defendant. Mr. Rotunno and his co-defendant opine that the government has purposely dragged its feet in providing this discovery, so that the time for filing a motion to suppress will lapse. Mr. Rotunno and his co-defendant want the Court to compel the production of these transcripts, so they may be evaluated.

Regarding the issue of whether the information set forth in the affidavit was "stale," Mr. Rotunno will adopt the arguments and reasoning propounded by his co-defendants.

## Conclusion

Mr. Rotunno prays that the Court grant the relief requested.

## Certificate of Service

I HEREBY CERTIFY that a true and correct copy of the foregoing was delivered by mail and/or faxed this 11th day of September 2000 to:

Paul F. Schwartz, Esq.
Assistant United States Attorney
500 East Broward Boulevard, Suite 700
Fort Lauderdale, FL 33394
(954-356-7336)

Allen Kaufman, Esq.
2900 North Dixie Highway, Suite 201
Oakland Park, FL 33334-2666
(954-563-6813)

William Norris, Esq.
3225 Aviation Avenue, Suite 300
Coconut Grove, FL 33133
(305-285-0699)

Dennis R. Bedard, Edq.
1717 N. Bayshore Drive, Suite 102
Miami, FL 33132
(305-530-9587)

James M. Stark, Esq.
524 S. Andrews Avenue, Suite 304N
Fort Lauderdale, FL 33301
(954-768-0738)


Martin Bidwell, Esq.
Assistant Federal Public Defender
101 N.E. Third Avenue, Suite 202
Fort Lauderdale, FL 33301
(954-356-7556)

Simon T. Steckle, Esq.
701 Brickell Avenue, Suite 3260
Miami, FL 33131
(305-536-6495)

Theodore Klein
800 Brickell Avenue, Penthouse Two
Miami, FL 33131-2944
(305-358-4010)

Phillip R. Horowitz, Esq.
12651 S. Dixie Highway, Suite 328
Miami, FL 33156
(305-232-1963)

Raymond Miller, Esq.
400 S.E. Sixth Street
Fort Lauderdale, FL 33301
(954-462-8594)

John F. Cotrone, Esq.
509 S.E. 9 Street, Suite 1
Fort Lauderdale, FL 33316
(954-779-7758)

Michael Dutko, Esq.
600 S. Andrews Avenue, Suite 500
Fort Lauderdale, FL 33301

(954-764-5040)

Thomas D. Sclafani, Esq.
200 E. Broward Boulevard, Suite 1210
Fort Lauderdale, FL 33301
(954-524-8590)

Herbert Cohen, Esq.
200 S.E. 6th Street, Suite 205
Fort Lauderdale, FL 33301
(954-766-7969)

R. Michael Hursey, Esq.
305 S. Andrews Avenue, Suite 701
Fort Lauderdale, FL 33301
(954-779-7980)

> H. DOHN WILLIAMS JR., P.A.
> P.O. Box 1722
> Fort Lauderdale, FL 33302
> 954-523-5432; 527-5565 (fax)
>
> By: _____
>     H. Dohn Williams Jr.
>     Fla. Bar # 0166087

e:\clients\rotunno\suppresswire.1