UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO. 00-6154-CR-DIMITROULEAS

UNITED STATES OF AMERICA,

    Plaintiff,

vs.

JOSEPH ROTUNNO, et al

    Defendants.

_____/

**NIGHT BOX**
**FILED** ...

**SEP 1 1 2000**

CLARENCE MADDOX
CLERK USDC/SDFL/FTL

## APPENDIX TO
## MOTION TO SUPPRESS INTERCEPTION OF WIRE COMMUNICATIONS

App. A – Authorization Order of Attorney General Janet Reno

App. B – Authorization memorandum appended to application for October 16, 1998 wiretap warrant

App. C - Authorization memorandum appended to application for November 19, 1998 wiretap warrant

App. D – Portions of probable affidavit for November 19, 1998 wiretap warrant detailing the contents of fifty (50) telephone calls intercepted per the October 16, 1998 wiretap warrant

### Certificate of Service

    I HEREBY CERTIFY that a true and correct copy of the foregoing was delivered by mail

and/or faxed this 11th day of September 2000 to:

Paul F. Schwartz, Esq.
Assistant United States Attorney
500 East Broward Boulevard, Suite 700
Fort Lauderdale, FL 33394
(954-356-7336)

Allen Kaufman, Esq.
2900 North Dixie Highway, Suite 201
Oakland Park, FL 33334-2666
(954-563-6813)



William Norris, Esq.
3225 Aviation Avenue, Suite 300
Coconut Grove, FL 33133
(305-285-0699)

Dennis R. Bedard, Edq.
1717 N. Bayshore Drive, Suite 102
Miami, FL 33132
(305-530-9587)

James M. Stark, Esq.
524 S. Andrews Avenue, Suite 304N
Fort Lauderdale, FL 33301
(954-768-0738)

Martin Bidwell, Esq.
Assistant Federal Public Defender
101 N.E. Third Avenue, Suite 202
Fort Lauderdale, FL 33301
(954-356-7556)

Simon T. Steckle, Esq.
701 Brickell Avenue, Suite 3260
Miami, FL 33131
(305-536-6495)

Theodore Klein
800 Brickell Avenue, Penthouse Two
Miami, FL 33131-2944
(305-358-4010)

Phillip R. Horowitz, Esq.
12651 S. Dixie Highway, Suite 328
Miami, FL 33156
(305-232-1963)

Raymond Miller, Esq.
400 S.E. Sixth Street
Fort Lauderdale, FL 33301
(954-462-8594)

John F. Cotrone, Esq.
509 S.E. 9 Street, Suite 1
Fort Lauderdale, FL 33316
(954-779-7758)

Michael Dutko, Esq.
600 S. Andrews Avenue, Suite 500
Fort Lauderdale, FL 33301
(954-764-5040)

Thomas D. Sclafani, Esq.
200 E. Broward Boulevard, Suite 1210
Fort Lauderdale, FL 33301
(954-524-8590)

Herbert Cohen, Esq.
200 S.E. 6th Street, Suite 205
Fort Lauderdale, FL 33301
(954-766-7969)

R. Michael Hursey, Esq.
305 S. Andrews Avenue, Suite 701
Fort Lauderdale, FL 33301
(954-779-7980)

H. DOHN WILLIAMS JR., P.A.
P.O. Box 1722
Fort Lauderdale, FL 33302
954-523-5432; 527-5565 (fax)

By: _____
H. Dohn Williams Jr.
Fla. Bar # 0166087

e:\clients\rotunno\suppresswire.1app



Office of the Attorney General
Washington, D. C. 20530

ORDER NO. 1950-95

SPECIAL DESIGNATION OF THE ASSISTANT, ACTING ASSISTANT,
ANY DEPUTY ASSISTANT, AND ANY ACTING DEPUTY ASSISTANT ATTORNEY
GENERAL OF THE CRIMINAL DIVISION TO AUTHORIZE APPLICATIONS FOR
COURT ORDERS FOR INTERCEPTION OF WIRE OR ORAL COMMUNICATIONS
UNDER CHAPTER 119, TITLE 18, UNITED STATES CODE

By virtue of the authority vested in me by 28 U.S.C. §§ 509
and 510, 5 U.S.C. § 301, and 18 U.S.C. § 2516(1), and in full
recognition that 18 U.S.C. § 2516(1) empowers the Attorney General,
Deputy Attorney General, and Associate Attorney General to
authorize applications to a Federal judge of competent jurisdiction
for orders authorizing the interception of wire and oral
communications, I hereby specially designate the Assistant Attorney
General in charge of the Criminal Division, any Acting Assistant
Attorney General in charge of the Criminal Division, any Deputy
Assistant Attorney General of the Criminal Division, and any Acting
Deputy Assistant Attorney General of the Criminal Division, to
exercise the power conferred by section 2516(1) of title 18, United
States Code, to authorize applications to a Federal judge of
competent jurisdiction for orders authorizing or approving the
interception of wire or oral communications by the Federal Bureau
of Investigation or a Federal agency having responsibility for the

INTERNAL ORDER/NOT PUBLISHED
IN F.R.

A-1

investigation of the offense(s) as to which such application is
made, when such interception may provide evidence of any of the
offenses specified in section 2516 of title 18, United States Code.

    Order No. 1709-93 of April 5, 1993, is revoked effective at
midnight of the day following the date of this order.

Date: February 13, 1995

                              JANET RENO
                              Attorney General

- 2 -
A-2

**U.S. Department of Justice**

*FDH:MHK:JPW:PJ:pj*

*Washington, D.C. 20530*

OCT 15 1998

**MEMORANDUM**

TO:     Frederick D. Hess, Director
        Office of Enforcement Operations
        Criminal Division

FROM:   James K. Robinson
        Assistant Attorney General
        Criminal Division

SUBJECT:   Authorization for Interception Order Application

This is with regard to your recommendation that
I, an appropriately designated official of the Criminal Division,
authorize an application to a federal judge of competent
jurisdiction for an order under Title 18, United States Code,
Section 2518, authorizing for a thirty (30) day period the
interception of wire communications to and from the cellular
telephone bearing the number (954) 295-6672, subscribed to by
Joseph Rotunno, 1700 N. St. Rd. 7, Hollywood, Florida, in
connection with an investigation into possible violations of
Title 18, United States Code, Sections 2, 371, 892, 893, 894,
1952, 1955, 1962, 2314, and 2315, by Joseph Rotunno, Albert
Polito, Emro Capri, Fred Scarola, Howard Mandel, Reynold Maragni,
and others as yet unknown.

By virtue of the authority vested in the Attorney General of
the United States by Section 2516 of Title 18, United States
Code, the Attorney General has by Order Number 1950-95, dated
February 13, 1995, designated specific officials in the Criminal
Division to authorize applications for court orders authorizing
the interception of wire or oral communications. As a duly
designated official in the Criminal Division, this power is
exercisable by me. WHEREFORE, acting under this delegated power,
I hereby authorize the above-described application to be made by
any investigative or law enforcement officer of the United States
as defined in Section 2510(7) of Title 18, United States Code.

B-1

Accordingly, you or any other attorney on your staff who is an investigative or law enforcement officer of the United States within the meaning of Section 2510(7) of Title 18, United States Code, are authorized to make the above-described application.

Please be advised that it is your obligation, as supervising attorney in this matter, to ensure that the tapes of the intercepted conversations are adequately protected, and that these tapes are sealed by the court on a regular basis if the interception should continue beyond thirty days, preferably at the end of each thirty-day interception period. If there should be a break in the interception period, you must have the tapes sealed as soon as practicable thereafter.

Sincerely,

James K. Robinson
Assistant Attorney General

By: Frederick D. Hess/cers

Frederick D. Hess, Director
Office of Enforcement Operations

Enclosures

B-2

*FDH:MHK:JPW:PJ:pj*

Washington, D.C. 20530

NOV 1 8 1998

MEMORANDUM

TO:      Frederick D. Hess, Director
         Office of Enforcement Operations
         Criminal Division

FROM:    James K. Robinson
         Assistant Attorney General
         Criminal Division

SUBJECT: Authorization for Interception Order Application

     This is with regard to your recommendation that
I, an appropriately designated official of the Criminal Division,
authorize an application to a federal judge of competent
jurisdiction for an order under Title 18, United States Code,
Section 2518, authorizing for a thirty (30) day period the
continued interception of wire communications to and from the
cellular telephone bearing the number (954) 295-6672, subscribed
to by Joseph Rotunno, 1700 N. St. Rd. 7, Hollywood, Florida, in
connection with an investigation into possible violations of
Title 18, United States Code, Sections 152, 157, 371, 892, 893,
894, 1952, 1955, 1956, 1962, 2314, and 2315, by Joseph Rotunno,
Albert Polito, Emro Capri, Fred Scarola, Howard Mandel, Reynold
Maragni, Gary Braeseke, James Lapolla, Daniel Carver, Percy
Morris, Martin Halpern, Harris Steinhart, John Mamone, Scott
Miller, Alex Ruiz, Burt Caskill, Cliff Pierce, and others as yet
unknown.

     By virtue of the authority vested in the Attorney General of
the United States by Section 2516 of Title 18, United States
Code, the Attorney General has by Order Number 1950-95, dated
February 13, 1995, designated specific officials in the Criminal
Division to authorize applications for court orders authorizing
the interception of wire or oral communications. As a duly
designated official in the Criminal Division, this power is
exercisable by me. WHEREFORE, acting under this delegated power,
I hereby authorize the above-described application to be made by
any investigative or law enforcement officer of the United States
as defined in Section 2510(7) of Title 18, United States Code.

C-1

The authorization given is intended to apply not only to the target telephone number listed above, but to any changed telephone numbers, or any other telephone numbers, subsequently assigned to or used by the instrument bearing the same electronic serial number as the target cellular telephone within the thirty-day period. The authorization is also intended to apply to background conversations intercepted in the vicinity of the target telephone while the telephone is off the hook or otherwise in use.

James K. Robinson
Assistant Attorney General
Criminal Division

11-18-99
Date

John C. Keeney
Deputy Assistant Attorney General

C-2

extortionate extensions of credit by ROTUNNO and the other interceptees. ROTUNNO supervises a crew of criminal associates who collect the extensions of credit through threats of force and violence.

## COURT AUTHORIZED WIRE INTERCEPTIONS

34. On October 16, 1998, at approximately 10:39 a.m., a court authorized interception was made on telephone number (954)295-6672. ROTUNNO placed a call to BURT CASKILL, at telephone number (305)215-3437, subscribed to by Lynn Scapicchio, 345 Madision Street, Hollywood, Florida. ROTUNNO made plans to meet BURT CASKILL at a bar in Hollywood, Florida. BURT CASKILL informed ROTUNNO that he (BURT CASKILL) is to meet "a guy" to pick up 21 or 22 "dimes" ($21,000 or $22,000) in checks. BURT CASKILL stated that he would give the checks to ROTUNNO. ROTUNNO advised that he would "take care" of the checks but hated to give them to "that guy" because it will cost "300 to get it done." BURT CASKILL and ROTUNNO discussed whether the checks would be payable to cash or to someone else's name. BURT CASKILL advised that he doesn't want his name on any checks that have to be brought into the bank. BURT CASKILL and ROTUNNO agreed that the checks should be made payable to cash.

A. Your Affiant understands that losing bettors sometimes satisfy their gambling debts by providing checks to ROTUNNO and other targets of this investigation. Your Affiant further understands that the above recited conversation reflects that BURT CASKILL and ROTUNNO are engaged in the laundering of monetary instruments.

17

D-1

35.  On October 16, 1998, at approximately 1:15 p.m., a court authorized interception was made on telephone number, (954)295-6672.  ROTUNNO placed a call to telephone number (954)570-3592, a telephone utilized by AL POLITO at his residence.  ROTUNNO informed POLITO that he (ROTUNNO) is on his way to meet Mike (CAPRI) at Huddles (Sports Cafe).  POLITO stated, "maybe he'll come clean." ROTUNNO stated, "he's not gonna come clean - he's a fucking liar little cocksucker...I'm gonna tell him.  With all the bullshit you put me in the middle of everything."  POLITO advised ROTUNNO that he (POLITO) will meet him at Huddles for the meeting.  ROTUNNO stated "I got the checks, did you talk to him yet?", ROTUNNO advised POLITO that,"he may be going to get the money".

        A.  Your Affiant understands that the above-recited conversation reflects that CAPRI will distribute proceeds generated from the illegal gambling business to ROTUNNO and POLITO.

36.  On October 17, 1998, at approximately 9:51 a.m., a court authorized interception was made on telephone number (954) 295-6672.  ROTUNNO placed a call to a cellular telephone utilized by AL POLITO, (954)298-9154.   The telephone was answered by MARTY HALPERN.  ROTUNNO told HALPERN they will have a meeting a 4:00 p.m. to straighten out financial matters.  ROTUNNO advised HALPERN that BURT CASKILL already gave him (ROTUNNO) two checks plus $11,000 that he (ROTUNNO) laid out.  ROTUNNO advised that BURT CASKILL will deliver an additional $40,000 in cash today.  ROTUNNO also told HALPERN that POLITO's guy will give POLITO cash Monday and the balance Wednesday.

18

D-2

A.   Your Affiant understands that the above-recited
conversation reflects that HALPERN is the financier of the illegal
gambling business.

37. On October 17, 1998, at approximately 1:54 p.m, a court
authorized interception was made on telephone number (954)295-6672.
ROTUNNO called telephone number (954)340-0134, subscribed to by
Gabriel Ponzio, 10900 NW 15th Street, Coral Springs, Florida.   An
unidentified male (UM) advised ROTUNNO that he let Freddy SCAROLA
know that he (UM) wanted 25% of everything he (UM) "wrote" for
SCAROLA's bookmaking operation.   The UM told ROTUNNO that SCAROLA
wants to "make the guys up north happy" but all he (UM) was asking
for was 25%.   The UM told ROTUNNO that SCAROLA would have to pay
his (UM's) Father.   ROTUNNO told the UM that he (UM) was doing the
right thing.

A.   Your Affiant understands that the phrase "make the
people up north happy", means that a portion of the illegal
bookmaking operation's proceeds are supplied to the hierarchy of
the organization in New York.

38. On October 17, 1998, approximately 1:03 p.m., a court
authorized interception was made on telephone number (954)295-6672.
ROTUNNO called telephone number (305)861-2766.   ROTUNNO spoke with
CLIFF PIERCE who he (ROTUNNO) identified as his accountant.
ROTUNNO stated "Can you get me some office space for some friends,
who are looking for a spot with at least three phone lines, you
know what I mean?"

19

D-3

A.  Your Affiant understands that ROTUNNO and PIERCE were discussing obtaining office space to be used for an illegal gambling business.

39.  On October 18, 1998, at approximately 9:51 a.m., a court authorized interception was made on telephone number (954)295-6672. ROTUNNO received an incoming telephone call from Gary BRAESEKE. ROTUNNO told BRAESEKE to give him (ROTUNNO) the "figures" from last night and for the week.  BRAESEKE reviewed records and provided ROTUNNO with the status of various bettors.  BRAESEKE told ROTUNNO that they are down "14 or 15" for the week.  BRAESEKE told ROTUNNO that Mike CAPRI had recently made statements that indicated BRAESEKE was not going to be paid.  ROTUNNO told BRAESEKE, "do you remember what I told you, you get 30-35 that's what you get." ROTUNNO told BRAESEKE, "well he (CAPRI) better not do anything stupid, if he mentions anything like going to the cops, anything happens to that office, your (BRAESEKE) gonna get in trouble and I'm gonna come looking for him (CAPRI) and Bobby."

A.  Your Affiant understands that the above-recited conversation reflects that ROTUNNO and BRAESEKE discussed BRAESEKE's monitoring interest in the illegal gambling business.

40.  On October 18, 1998, at approximately 10:43 a.m., a court authorized interception was made on telephone number (954)295-6672. ROTUNNO placed a call to cellular telephone utilized by Al POLITO, (954)298-9154.  ROTUNNO asked POLITO, "how much did you tell Alan, two and a half?"  POLITO told ROTUNNO that he (POLITO) initially told Alan two but said he (POLITO) would have to negotiate.

20

D-4

ROTUNNO told POLITO "we should make at least a dollar on it because we could have given it to your other friend for a least three, throw in a half point, what's that a $100?" ROTUNNO told POLITO you have to tell him (Alan Epstein) it's two and a half and tell him its a personal favor.

A. Based upon the investigation to date, source information and discussions with the assigned agents, your affiant understands that ROTUNNO arranged for Alan Epstein to pay two and a half points a week interest on a $20,000 loan. This extortionate extension of credit would generate approximately $500 in interest payments, known as "vig" or "vigorish". ROTUNNO and POLITO will keep a "dollar" or $100 of this payment while ROTUNNO must pass the remainder to whomever provided the money to ROTUNNO.

41. On October 18, 1998, at approximately 1:07 p.m., a court authorized interception was made on telephone number (954)295-6672. ROTUNNO placed a telephone call to telephone number (954)341-8116. ROTUNNO spoke to an unidentified male (UM) on a speaker phone. The UM asked ROTUNNO for advice relating to a illicit gambling operation. The UM asked ROTUNNO what actions he (ROTUNNO) would take if an individual who is a sub-bookie (i.e. an individual who refers bettors to a bookie in return for a percentage of all losing bets) continually reported that a bettor could not repay a $6,100 gambling debt. ROTUNNO told the UM that, "you gotta go grab this guy (sub-bookie) and you gotta tell him to go get this JB (delinquence bettor). Let me tell you something I would grab the him (sub-bookie) by the throat." ROTUNNO continued to advise the

21

D-5

UM, "if it was me I would be very aggressive I would go grab the guy(sub-bookie) , I'd tell'em right now get him (sub-bookie) in the car I wanna talk to you. I'd say take me to this guy's (delinquence bettor's) house otherwise you're (sub-bookie) gonna have the biggest problem you've ever had."

42. On October 19, 1998, at approximately 9:19 a.m., a court authorized interception was made on telephone number (954)295-6672. ROTUNNO placed a call to cellular telephone utilized by Al POLITO, (954)298-9154. ROTUNNO told POLITO that he (POLITO) had to meet Alan Epstein on time. ROTUNNO told POLITO that he (POLITO) had to meet Alan Epstein on Friday because ROTUNNO meets his "guy" on a Saturday. ROTUNNO told POLITO that he (POLITO) wanted to open another office and that BURT CASKILL and James LAPOLLA were ready to "do it" and they have 70 players (bettors) between them. ROTUNNO told POLITO that he (POLITO) had to get everybody that owed him (POLITO) money over there to pay today and Wednesday. ROTUNNO told POLITO that he (ROTUNNO) needed to collect the money from POLITO because ROTUNNO needed to help "this guy out". ROTUNNO told POLITO that he met "the guy" yesterday and gave him ("the guy") $27,500. ROTUNNO advised POLITO about how many depositions he (ROTUNNO) had to attend and stated that filing bankruptcy is usually an easy process for most people.

A. Based upon the investigation to date, source information and discussions with the assigned agents, your Affiant understands that ROTUNNO referred to an extortionate extension of credit currently pending with Alan Epstein. ROTUNNO also referred

to meeting and paying the individual that gave him (ROTUNNO) the money to loan. The term "another office" referred to ROTUNNO's plan to open another illegal gambling business with BURT CASKILL and James LAPOLLA that will involve at least 70 bettors.

43. On October 19, 1998, at approximately 1:27 p.m., a court authorized interception was made on telephone number (954) 295-6672. ROTUNNO placed a call to his girlfriend, Wanda Arias, at telephone number (954) 771-4378. ROTUNNO told Arias that he (ROTUNNO) just finished his deposition pertaining to his (ROTUNNO) filing for bankruptcy. ROTUNNO advised Arias that he (ROTUNNO) had taken all of his jewelry off before going to the deposition but had forgotten to take off his gold watch. ROTUNNO and Arias then discussed the value of the gold watch and whether anyone would know if the watch was real gold or not.

44. On October 19, 1998, at approximately 5:40 p.m. a court authorized interception was made on telephone number (954)295-6672. ROTUNNO placed a telephone call to (305)226-9271 and spoke with EMRO "Mike" CAPRI. ROTUNNO told CAPRI to "get an office" with two 800 numbers and six roll-over lines. CAPRI advised ROTUNNO that Gary BRAESEKE was "working on it." ROTUNNO responded to CAPRI, "great let's go make money." CAPRI and ROTUNNO discussed bookmaking figures concerning BURT CASKILL. ROTUNNO advised that BURT CASKILL gave him $26,500 out of $58,000 and will give him (ROTUNNO) the rest tomorrow.

45. On October 20, 1998, at approximately 9:01 a.m. a court authorized interception was made on telephone number (954)295-6672.

23

$D$-7

ROTUNNO placed a call to cellular telephone utilized by Al POLITO, (954)298-9154. ROTUNNO spoke with POLITO. POLITO asked ROTUNNO if he (ROTUNNO) knew an accountant who could help Alan LNU. POLITO stated that he (POLITO) was talking about "laundry" (money laundering). ROTUNNO told POLITO that CLIFF PIERCE was the best and that he (ROTUNNO) would put CLIFF PIERCE in touch with Alan LNU (referring to ROTUNNO's accountant).

46. On October 20, 1998, at approximately 9:13 a.m. a court authorized interception was made on telephone number (954)295-6672. ROTUNNO placed a call to a telephone used by EMRO "Mike" CAPRI. ROTUNNO told CAPRI that he (CAPRI) should look for an office in Miami. CAPRI told ROTUNNO that he (CAPRI) was working on it. ROTUNNO stated, "the only way to make money in this business is to have a lot of volume." ROTUNNO told CAPRI to inform the landlord that the office was to be used for a collection agency.

47. On October 20, 1998, at approximately 12:04 p.m. a court authorized interception was made on telephone number (954)295-6672. ROTUNNO placed a call to telephone number (954)987-0000. ROTUNNO spoke with Daniel CARVER. CARVER identified himself as ROTUNNO's nephew. CARVER asked ROTUNNO to meet him (CARVER) for lunch. CARVER told ROTUNNO that he (CARVER) was currently working with Marvin at ABCO construction. CARVER told ROTUNNO that he (CARVER) is under strict supervision with many restrictions. CARVER told ROTUNNO that he (ROTUNNO) is at the top of his (CARVER's) restriction list. CARVER told ROTUNNO that he (CARVER) had to be back to "the house" (half-way house) by 5:00 p.m. otherwise they put

24

D-8

more restrictions on him (CARVER).   ROTUNNO and CARVER made arrangements to meet at a later time.

A.   Your Affiant understands that CARVER is presently residing in a half-way house pursuant to his previously imposed federal sentence.

48.   On October 21, 1998, at approximately 10:42 a.m. a court authorized interception was made on telephone number (954)295-6672. ROTUNNO placed a call to telephone number (305)215-3437 and spoke with BURT CASKILL.   ROTUNNO told BURT CASKILL that he needed to meet with him (BURT CASKILL) because "something was bothering" him (ROTUNNO).   BURT CASKILL asked ROTUNNO who "Jimmy Brown" was and if he (Jimmy Brown) was the same person as Jimmy Clemenza.   ROTUNNO told BURT CASKILL that Jimmy Brown was not Clemenza but was an old-timer who ROTUNNO used to "do numbers" for in Brooklyn, 30-40 years ago.   ROTUNNO told BURT CASKILL that he (BURT CASKILL) will be working with Gary BRAESEKE from now on instead of EMRO "Mike" CAPRI. ROTUNNO told BURT CASKILL, BRAESEKE was "the main kid right now" and that ROTUNNO "took a lot away from" CAPRI because he (CAPRI) did something ROTUNNO didn't like.   ROTUNNO told BURT CASKILL that he (BURT CASKILL) was involved with CAPRI in attempting to conceal a $10,000 illegal gambling transaction from ROTUNNO.   ROTUNNO told BURT CASKILL he (ROTUNNO) had the best "backer" in the world and didn't want to see him (the backer) lied to or lose money.

49.   On October 21, 1998, at approximately 11:14 a.m. a court authorized interception was made on telephone number (954)295-6672. ROTUNNO placed a call to telephone number (305)963-6372 and spoke

25

D-9

with Gary BRAESEKE. ROTUNNO and BRAESEKE discussed an illicit gambling business, money that was owed by various bettors and problems with CAPRI and BURT CASKILL. BRAESEKE told ROTUNNO that the final "take" for yesterday for all "the plays" was $41,210. BRAESEKE told ROTUNNO that he (BRAESEKE) had one prospective site for a gambling office that he (BRAESEKE) was going to check out.

50. On October 22, 1998, at approximately 11:04 a.m. a court authorized interception was made on telephone number (954)295-6672. ROTUNNO placed a call to cellular telephone utilized by Al POLITO, (954)298-9154. ROTUNNO told POLITO that he (ROTUNNO) spoke with HALPERN and told HALPERN to bring "40" with him (HALPERN).

51. On October 22, 1998, at approximately 6:10 p.m. a court authorized interception was made on telephone number (954)295-6672. ROTUNNO placed a call to telephone number (954)215-3437 and spoke with BURT CASKILL. ROTUNNO told BURT CASKILL to fax him (ROTUNNO) the "figures". BURT CASKILL told ROTUNNO that he (BURT CASKILL) was going to the new office to check if the toll free lines had been connected. ROTUNNO told BURT CASKILL to start business in the new office as soon as possible.

52. On October 23, 1998, at approximately 5:36 p.m. a court authorized interception was made on telephone number (954)295-6672. ROTUNNO placed a call to telephone number (954)926-6063. ROTUNNO spoke with SCOTT MILLER. MILLER told ROTUNNO, "we discussed yesterday that this guy is protected to this point. I'm (MILLER) giving him until Tuesday afternoon to give me my money and then I'm (MILLER) gonna do whatever I (MILLER) have to do." ROTUNNO told

26

$\bigcirc -10$

MILLER, "no one is gonna touch this guy...otherwise its gonna be bad for anyone who disrespects us and I'm (ROTUNNO) telling you in a nice way." ROTUNNO told MILLER that he (MILLER) would have to wait until next week.

  A. Your Affiant understands that the conversation reflects that CAPRI owed money to MILLER regarding illegal gambling activities and ROTUNNO instructed MILLER not to do anything to CAPRI without permission of ROTUNNO.

53. On October 24, 1998, at approximately 10:31 a.m., a court authorized interception was made on telephone number (954)295-6672. ROTUNNO placed a call to an unidentified male (UM) at telephone number (954)721-2283. ROTUNNO and the UM discussed gambling and ROTUNNO stated, "All I do now, I collect now, I charge protection." ROTUNNO and the UM discussed the $25,000 that ROTUNNO loaned to an individual named "Nicky".

54. On October 25, 1998, at approximately 9:23 a.m., a court authorized interception was made on telephone number (954)295-6672. ROTUNNO placed a call to (954) 963-6372 and spoke with Gary BRAESEKE. BRAESEKE explained ROTUNNO the weekly "figures" for gambling operations. BRAESEKE gave ROTUNNO his (BRAESEKE's) figures as well as CAPRI's and BURT CASKILL's figures pertaining to their gambling business.

55. On October 26, 1998, at approximately 12:23 p.m. a court authorized interception was made on telephone number (954)295-6672. ROTUNNO placed a call to cellular telephone number (954)298-9154 utilized by AL POLITO. ROTUNNO spoke with POLITO concerning an

27

$\bigcirc$ -11

unidentified individual that owed ROTUNNO and POLITO a gambling debt. ROTUNNO discussed a $25,000 extortionate extension of credit made to Alan Epstein and advised, "he (Epstein) had two weeks on the 25 and a month on the other." POLITO then put an individual believed to be JOHN MAMONE on the telephone with ROTUNNO. MAMONE asked ROTUNNO where Huey (STEINHART) had been. ROTUNNO advised MAMONE that he (ROTUNNO) told STEINHART that he (STEINHART) should bring "that guy" (MAMONE) something every month. ROTUNNO advised MAMONE, "I (ROTUNNO) told that guy (STEINHART) you owe this guy (MAMONE) the money, you bring him (MAMONE) the money."

A.   Your Affiant understands that the conversation reflects that STEINHART obtained an extortionate extension of credit from MAMONE.

56.   On October 26, 1998, at approximately 12:23 p.m. a court authorized interception was made on telephone number (954)295-6672. ROTUNNO placed a call to telephone number (954)587-1959. ROTUNNO spoke with PERCY MORRIS (Tiny). MORRIS stated he (MORRIS) just got back. ROTUNNO asked how it went. MORRIS told ROTUNNO he (MORRIS) went in and asked for Ellis LNU, and MORRIS was told that Ellis LNU was out of town. MORRIS told ROTUNNO he (MORRIS) left a message for Ellis LNU that MORRIS stopped by and to call "JR" (ROTUNNO) when he (Ellis LNU) got back.

A.   Your Affiant understands that the conversation reflects that MORRIS was attempting to collect an extortionate extension of credit on behalf of ROTUNNO.

28

D-12

57. On October 27, 1998, at approximately 9:25 a.m. a court authorized interception was made on telephone number (954)295-6672. ROTUNNO spoke with BRAESEKE concerning proceeds and balances from an illicit bookmaking enterprise. ROTUNNO told BRAESEKE, "when I (ROTUNNO) do the collecting I'll (ROTUNNO) make sure you (BRAESEKE) get paid this week."

58. On October 27, 1998, at approximately 10:49 a.m. a court authorized interception was made on telephone number (954)295-6672. ROTUNNO placed a call to telephone number (954)926-6063. ROTUNNO spoke with SCOTT MILLER. MILLER told ROTUNNO that he (MILLER) was still waiting to collect a debt from "the guy." ROTUNNO asked MILLER, who he (MILLER) "put his (MILLER's) plays through." MILLER responded that he (MILLER) put his "plays" through Atlanta but would rather put them through ROTUNNO.    ROTUNNO promised that he (ROTUNNO) would talk with "the guy."

59. On October 27, 1998, at approximately 11:26 a.m. a court authorized interception was made on telephone number (954)295-6672. ROTUNNO placed a call to telephone number (561)738-2549, subscribed to by James LAPOLLA. LAPOLLA told ROTUNNO that an individual named Johnny Canella (PH) called and told him (LAPOLLA) that Al Miniacci wanted to meet LAPOLLA tomorrow night a 7:00 p.m. at some hotel because "they" are doing some kind of deal. LAPOLLA told ROTUNNO that Miniacci knew him (LAPOLLA) from a previous deal.    ROTUNNO gave LAPOLLA permission to attend the meeting as long as he (LAPOLLA) told Miniacci, "regards from Joey the Florist and Tommy (Farese)...so he (Miniacci) will know it's right there."

29

D-13

A. Your Affiant understands that the conversation reflects that ROTUNNO's reference to "Tommy" is Thomas Farese, an incarcerated Colombo Capo.

60. On October 27, 1998, at approximately 12:59 p.m. a court authorized interception was made on telephone number (954)295-6672. ROTUNNO placed a call to telephone number (954)969-8606. ROTUNNO spoke with an unidentified male (UM). ROTUNNO asked the UM how his (UM's) current job was. The UM replied that it was boring and (UM) would almost rather be back in jail with his friend. ROTUNNO agreed that he (ROTUNNO) could never "work" and would rather be in jail than hold a legitimate job.

61. On October 27, 1998, at approximately 1:04 p.m. a court authorized interception was made on telephone number (954)295-6672. ROTUNNO placed a call to telephone number (305)624-8500 and initially spoke with an individual ROTUNNO identified as Frankie LNU. Frankie LNU then put CARVER on the telephone. ROTUNNO told CARVER that he (ROTUNNO) couldn't meet him (CARVER) for lunch but to keep his (CARVER's) schedule clear for breakfast or lunch tomorrow. ROTUNNO asked, "what went on with our friend." CARVER responded, "nothing yet." ROTUNNO told CARVER, "well set up an appointment and I'll meet "this guy". CARVER responded that he (CARVER) would speak with him ("the guy") tonight. ROTUNNO asked CARVER what he (CARVER) was doing this for, ROTUNNO thought he (CARVER) was no longer involved. CARVER stated that he (CARVER) was just doing "the guy" a favor. ROTUNNO told CARVER that he (ROTUNNO) would do anything in the world for "the guy".

30

D-14

A.   Your Affiant understands that the conversation reflects that CARVER acknowledged that he was engaged in the collection of an extortionate extensions of credit.

62.   On October 27, 1998, at approximately 1:38 p.m. a court authorized interception was made on telephone number (954)295-6672. ROTUNNO placed a call to telephone number (305)377-1830 and spoke with MORRIS. MORRIS told ROTUNNO that he (UM) was not back yet and asked ROTUNNO what he (ROTUNNO) wanted him (MORRIS) to do. ROTUNNO instructed "MORRIS" to be nice and leave a message. ROTUNNO instructed MORRIS to find out when he (UM) will be back. MORRIS asked ROTUNNO if he would be at the shop because he (MORRIS) needed prescriptions filled and that he (MORRIS) needed to make some money.

A.   The above recited conversation reflects that ROTUNNO and MORRIS are participants in the illegal possession and sale of prescription drugs.

63.   On October 27, 1998, at approximately 3:26 p.m. a court authorized interception was made on telephone number (954)295-6672. ROTUNNO placed a call to telephone number (954)587-1959 and spoke with MORRIS. MORRIS told ROTUNNO that he (MORRIS) tried to locate Jim LNU but he (MORRIS) was told Jim LNU had left the corporation. MORRIS told ROTUNNO that he (MORRIS) had left a message to call Joey. MORRIS told ROTUNNO that he (MORRIS) tried calling "the guy" and got an answering machine. ROTUNNO advised that he (ROTUNNO) had a good number for "the guy" which he would give MORRIS. MORRIS stated the "other guy" lived in a condo with security and he

31

$D-15$

(MORRIS) would go back tonight to see if the security was still in place. ROTUNNO stated that "the creep" owed $8,000 and instructed MORRIS to try to get through security tonight. (Believed to be a collection of gambling debt.)

64. On October 28, 1998, at approximately 9:17 a.m. a court authorized interception was made on telephone number (954)295-6672. ROTUNNO placed a call to telephone number (954)646-7051. ROTUNNO told an unidentified male that he (UM) was two weeks behind and needed to meet ROTUNNO soon to settle the debt.

65. On October 28, 1998, at approximately 12:04 p.m. a court authorized interception was made on telephone number (954)295-6672. ROTUNNO received a call from SCOTT MILLER. MILLER told ROTUNNO that he (MILLER) contacted CAPRI and asked CAPRI to return the money owed to him (MILLER). ROTUNNO told MILLER that he (MILLER) didn't have to worry because he (MILLER) would be repaid. ROTUNNO asked MILLER if he (MILLER) would resume putting "plays" through CAPRI. MILLER stated that he (MILLER) wouldn't because he (MILLER) didn't want to get in the same position again. ROTUNNO told MILLER not to worry about CAPRI repaying his (CAPRI's) debt because ROTUNNO now guaranteed CAPRI's business and that he (CAPRI) was with ROTUNNO.

66. On October 28, 1998, at approximately 1:34 p.m. a court authorized interception was made on telephone number (954)295-6672. ROTUNNO placed a call to telephone number (954)249-1737. ROTUNNO told Nick LNU that he (ROTUNNO) wanted to meet because, "we have a little problem here, we need to straighten out $11,000 or $12,000."

32

$D - 16$

Nick LNU told ROTUNNO that he (Nick LNU) had to liquidate some stocks and could have the money by next week. ROTUNNO told Nick LNU that he (ROTUNNO) couldn't wait another week. Nick LNU stated that he (Nick LNU) gambled with POLITO for years and never had a problem. ROTUNNO told Nick LNU that out of respect for POLITO he (ROTUNNO) would give him (Nick LNU) another week.

67.  On October 28, 1998, at approximately 1:44 p.m. a court authorized interception was made on telephone number (954)295-6672. ROTUNNO placed a call to cellular telephone (954)298-9154 utilized by Al POLITO. ROTUNNO recounted his (ROTUNNO's) conversation with Nick LNU to POLITO. ROTUNNO told POLITO to charge Nick LNU two or three points "vig" on the outstanding balance.  POLITO agreed to charge three points on $12,000 and collect $360 a week and split it with ROTUNNO.

68.  On October 28, 1998, at approximately 2:26 p.m. a court authorized interception was made on telephone number (954)295-6672. ROTUNNO placed a call to (305)343-2510 subscribed to by ALEX RUIZ, 105 East Flagler Street, Miami Florida. RUIZ asked ROTUNNO why he (ROTUNNO) didn't come by on Tuesday to pick up his (ROTUNNO's) money. RUIZ told ROTUNNO that "this guy" called him (RUIZ) and wanted to know if he (RUIZ) paid ROTUNNO. ROTUNNO told RUIZ to have "the guy" call him (ROTUNNO) if he (the guy) had a problem with RUIZ paying ROTUNNO.

69.  On October 28, 1998, at approximately 2:28 p.m. a court authorized interception was made on telephone number (954)295-6672. ROTUNNO placed a call to (954)587-1959. ROTUNNO told MORRIS to go

33

D-17

down "there" and get an envelope. ROTUNNO instructed MORRIS to return to the Flower Shop and call him (ROTUNNO) after he (MORRIS) picked it up.

70. On October 28, 1998, at approximately 3:43 p.m. a court authorized interception was made on telephone number (954)295-6672. ROTUNNO placed a call to (954)377-1830 and spoke with MORRIS. MORRIS asked ROTUNNO how much was supposed to be there. ROTUNNO told MORRIS, \$10,900. MORRIS told ROTUNNO that he (MORRIS) only had a check for \$9,900. ROTUNNO instructed MORRIS to tell the secretary the amount is \$1,000 off. ROTUNNO explained that he was very upset that "MORRIS" received a check instead of cash.

71. On October 29, 1998, at approximately 12:34 p.m. a court authorized interception was made on telephone number (954)295-6672. ROTUNNO placed a call to telephone number (305)962-7799. MILLER told ROTUNNO "the guy" who went out to San Diego to collect funds has had, "a whole lot of positive response". Scott LNU told ROTUNNO that "the guy" had located a 1992 Porsche in the area that belonged to a debtor. Scott LNU told ROTUNNO "the guy" had two Rolex Presidentials. ROTUNNO told Scott LNU that he (ROTUNNO) would bring the Rolexs to "a guy" to look at them.

72. On October 29, 1998, at approximately 3:15 p.m. a court authorized interception was made on telephone number (954)295-6672. ROTUNNO placed a call to cellular telephone number (954)298-9154 utilized by Al POLITO. ROTUNNO referred POLITO to a fax concerning balances from illicit gambling operations and loanshark loans. ROTUNNO spoke at length concerning money he (ROTUNNO) has "laid out"

34

$\mathcal{D} - 18$

and money owed to POLITO and ROTUNNO. ROTUNNO told POLITO that he (ROTUNNO) hoped Marty (HALPERN) knew they (POLITO and ROTUNNO) were doing the right thing, because he (HALPERN) had laid money out and hadn't gotten anything back yet.

73.   On October 29, 1998, at approximately 4:04 p.m. a court authorized interception was made on telephone number (954)295-6672. ROTUNNO placed a call to telephone number (954)298-4893 and spoke with Harris "Huey" STEINHART. STEINHART told ROTUNNO "the guy" (Bob LNU) called him (STEINHART) and said he (Bob LNU) would get STEINHART the money. ROTUNNO told STEINHART that he (ROTUNNO) had made a call concerning the debt. STEINHART thanked ROTUNNO for his (ROTUNNO's) help. STEINHART told ROTUNNO that he (STEINHART) was working through a private detective to locate (Jeffery) Braverman, another individual who owed STEINHART money. ROTUNNO advised STEINHART that he (ROTUNNO) could assist STEINHART because he (ROTUNNO) had a "hook" at Florida Power and Light, and for $100 ROTUNNO could find out where Braverman activated any new account.

74.   On October 31, 1998, at approximately 10:57 a.m. a court authorized interception was made on telephone number (954)295-6672. ROTUNNO placed a call to telephone number (561)782-5495 and spoke to James LAPOLLA. LAPOLLA told ROTUNNO that "the guy" with the license just called him (LAPOLLA) and he (LAPOLLA) needed Benny LNU's information. ROTUNNO asked LAPOLLA what information he (LAPOLLA) needed from Benny LNU. LAPOLLA told ROTUNNO to get half the money, Benny LNU's height, weight, date of birth, the name and address he (Benny LNU) wanted to use and the first five numbers of

35

D-19

his (Benny LNU) social security number. ROTUNNO told LAPOLLA to charge (Benny LNU) $1,300 because he (Benny LNU) was a friend. LAPOLLA told ROTUNNO it cost him (LAPOLLA) $900.

     A. Your Affiant understands that the conversation reflects that LAPOLLA attempted to fraudulently obtain a Florida driver's license for Benny LNU.

75. On November 2, 1998, at approximately 12:11 p.m. a court authorized interception was made on telephone number (954)295-6672. ROTUNNO placed a call to telephone number (305)963-6372. ROTUNNO spoke to Gary BRAESEKE concerning "figures" from BRAESEKE's, CAPRI's and BURT CASKILL's bookmaking operations. BRAESEKE described that CAPRI's customers owed about $15,000 but (CAPRI) was having problems collecting. ROTUNNO instructed BRAESEKE to inform CAPRI that "we are going to go after the people who owe us money." BRAESEKE advised ROTUNNO that the gambling operation earned roughly $40,000 but there may be a few discrepancies. ROTUNNO advised if the "figure" was off $5,000 either way it didn't matter.

76. On November 2, 1998, at approximately 12:58 p.m. a court authorized interception was made on telephone number (954)295-6672. ROTUNNO placed a call to telephone number (954)992-7768. EMRO "Mike" CAPRI gave ROTUNNO the total profits derived from an illegal gambling business. CAPRI told ROTUNNO that the bookmaking operation was making about $30,000 a week. ROTUNNO asked CAPRI if he (CAPRI) needed any help collecting money owed to the bookmaking operation.

36

D-2ɔ

77. On November 3, 1998, at approximately 4:07 p.m. a court authorized interception was made on telephone number (954)295-6672. ROTUNNO placed a call to telephone number (305)343-2510 and spoke to ALEX RUIZ. RUIZ told ROTUNNO that he (RUIZ) put money in the business and wrote checks out of the business in order to pay ROTUNNO. ROTUNNO told RUIZ that anything small, under 20 dimes ($20,000) will be paid on a Tuesday and that anything over $20 dimes ($20,000) will be paid on a Thursday. RUIZ told ROTUNNO that "the guy" keeps calling him and asks for ROTUNNO to call him ("the guy"). ROTUNNO advised RUIZ that he (ROTUNNO) doesn't talk to guys who call the cops and he ("the guy") may be a cop himself.

78. On November 4, 1998, at approximately 5:20 p.m. a court authorized interception was made on telephone number (954)295-6672. ROTUNNO placed a call to telephone number (305)885-5256 and spoke with Marty HALPERN. ROTUNNO and HALPERN discussed the gambling operations that ROTUNNO was controlling and HALPERN was financing. ROTUNNO advised HALPERN that he (ROTUNNO) had a check for approximately $8000 for HALPERN. ROTUNNO asked HALPERN if he (HALPERN) wanted cash or the check. ROTUNNO explained it would take him (ROTUNNO) until Monday to convert the check to cash. HALPERN told ROTUNNO that he (HALPERN) would take the check and "deposit it here."

79. On November 5, 1998, at approximately 4:05 p.m. a court authorized interception was made on telephone number (954)295-6672. ROTUNNO placed a call to telephone number (954) 926-6063. SCOTT MILLER told ROTUNNO he (MILLER) was sick of waiting for CAPRI to

37

D-21

repay his debt to MILLER. MILLER told ROTUNNO he (MILLER) was
going to do what he (MILLER) had to do to collect CAPRI's debt.
ROTUNNO warned MILLER not to touch CAPRI and he (ROTUNNO) wouldn't
allow MILLER to do it.

80. On November 6, 1998, at approximately 1:41 p.m. a court
authorized interception was made on telephone number (954)295-6672.
ROTUNNO placed a call to a cellular telephone utilized by AL
POLITO, (954) 298-9154. ROTUNNO told POLITO to start switching
"players" over to the new bookmaking office. POLITO told ROTUNNO
he (POLITO) is with "Tiny" (MORRIS) running around doing
collections. POLITO told ROTUNNO he (POLITO) used "Tiny" a lot.
ROTUNNO replied he (POLITO) should use him (MORRIS) as much as
POLITO wanted.

81. On November 6, 1998, at approximately 5:32 p.m. a court
authorized interception was made on telephone number (954)295-6672.
ROTUNNO placed a call to a cellular telephone utilized by AL
POLITO, (954) 298-9154. ROTUNNO told POLITO he (ROTUNNO) was
contacted by Marty LNU who wanted to give them (POLITO and ROTUNNO)
"hedge off work" possibly $10,000, $20,000 or $30,000 on three
games. POLITO recommended to ROTUNNO they open an additional
office in order to increase their percentage. ROTUNNO recommended
they open an account in the Bahama's and advised POLITO "it was
wiseguy action."

82. On November 7, 1998, at approximately 9:41 a.m. a court
authorized interception was made on telephone number (954)295-6672.
ROTUNNO placed a call to a cellular telephone utilized by AL

POLITO, (954) 298-9154. ROTUNNO told POLITO he (ROTUNNO) wanted to bring the $9,300 from a bettor identified as "the doctor." POLITO told ROTUNNO "the doctor" only gave him (POLITO) two checks that totaled $8,300 and POLITO had to pay $4,000 out to winning bettors. ROTUNNO told POLITO he (ROTUNNO) would meet POLITO by the Fina Station in order to get the money. ROTUNNO advised POLITO he (ROTUNNO) already paid Marty (HALPERN) $8,000 and ROTUNNO wanted to make sure he (HALPERN) got the money, "so he (HALPERN) knows." ROTUNNO told POLITO, "we have to start running this like a business, this place is no piece of shit business any more. ROTUNNO stated; "you (POLITO) know this guy Marty (HALPERN) will be the best money man we ever had." POLITO told ROTUNNO, "this portion of my (POLITO's) livelihood is based on my players." ROTUNNO told POLITO all that he (ROTUNNO) was trying to do was, "get us (ROTUNNO and POLITO) a big earn."

83. On November 9, 1998, at approximately 11:01 p.m. a court authorized interception was made on telephone number (954)295-6672. ROTUNNO placed a call to a cellular telephone utilized by AL POLITO, (954) 298-9154. ROTUNNO told POLITO to tell him (Al Epstein) "the time was up" on his (Epstein's) shylock loan. POLITO told ROTUNNO, Epstein was having problems repaying the loan and had already spoken with Marty (HALPERN) about repaying this debt. ROTUNNO became enraged and told POLITO he (POLITO) was getting too close and advised POLITO he (ROTUNNO) would handle it himself. ROTUNNO told POLITO that when he (ROTUNNO) used the word "we" it meant that ROTUNNO took all responsibility for POLITO and would do

39

D-23

whatever he (ROTUNNO) would have to do to make POLITO earn. ROTUNNO told POLITO he (ROTUNNO) had to answer to Marty (HALPERN) every week regarding "the money" and Epstein was causing ROTUNNO problems.

84.  On November 13, 1998, at approximately 3:40 p.m., a court authorized interception was made on (954) 295-6672. ROTUNNO placed a call to telephone number (305) 215-3437 and spoke to BURT CASKILL. ROTUNNO told BURT CASKILL that the (ROTUNNO) re-checked the figures and he (BURT CASKILL) owed $40,000. BURT CASKILL told ROTUNNO he (BURT CASKILL) was having problems collecting. BURT CASKILL told ROTUNNO that "the horse guy" left the book with a debt of $1,600. ROTUNNO told BURT CASKILL to give him (ROTUNNO) "the horse guy's" phone number and address because ROTUNNO wanted to meet him ("the horse guy") and give him a "motherfucking beating." ROTUNNO told BURT CASKILL that he (Rotunno) went and grabbed people for him (BURT CASKILL). ROTUNNO told BURT CASKILL that if he (ROTUNNO) found out BURT CASKILL was referring bettors to Jackie LNU's book, he (ROTUNNO) would break BURT CASKILLS' "fucking head."

## NORMAL INVESTIGATIVE TECHNIQUES

85.  We submit this application seeking authorization for the continued interception of wire communications because comparable alternative investigative techniques to further this investigation (a) have been tried with only limited success and appear reasonably unlikely to reach greater success if continued, or (b) are too dangerous to attempt and reasonably appear unlikely to succeed if tried, as more specifically set forth below.

40

$D-24$