UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO. 00-6154-CR-DIMITROULEAS

UNITED STATES OF AMERICA,

    Plaintiff,

vs.

JOSEPH ROTUNNO, et al.

    Defendant.

_____/

**NIGHT BOX**
**FILED**

**SEP 1 1 2000**

CLARENCE MADDOX
CLERK, USDC / SDFL / FTL

### MOTION TO HAVE DEFENDANT UNDERGO AN INDEPENDENT EVALUATION FOR MEMORY IMPAIRMENT/LOSS
### and
### RENEWED MOTION FOR MEDICAL SEVERANCE

COMES NOW the Defendant, Joseph Rotunno (Mr. Rotunno), by and through the undersigned attorney, pursuant to the Sixth Amendment to the United States Constitution and Fed.R.Crim.P. 14, and moves the Court to have Mr. Rotunno undergo an independent evaluation for memory impairment/loss, including but not limited to an evaluation by a doctor of psychology with experience in evaluating memory loss, and an MRI to document the brain damage suffered on account of his stroke and other aliments. Mr. Rotunno renews his motion to sever his case from his co-defendants. As grounds therefore, Mr. Rotunno states:

1. Mr. Rotunno's memory loss and his present health problems have adversely impacted on his ability to prepare his defense. As set forth below, Mr. Rotunno has established a sufficient predicate for the Court to order an independent evaluation of Mr. Rotunno's memory loss to determine whether it prevents him from effectively assisting his counsel in the preparation of his defense, and whether his memory loss prohibits him from effectively confronting the evidence against him.



2. Mr. Rotunno has been unable to effectively assist counsel in the preparation of his defense, because he cannot remember events that occurred in late 1998 and early 1999 (during the time of the court-authorized wiretaps), and he lacks the ability to concentrate for any length of time. So, Mr. Rotunno, through counsel, retained Neuropsychological Associates (i.e. Dr. Hyman H. Eisenstein and Dr. Esther Selevan) to evaluate his memory loss and his ability to concentrate. Their report is submitted under seal to the Court and the government.

3. Drs. Eisenstein and Selevan conclude that Mr. Rotuno has suffered memory loss as a result of his stroke in September 1999. He suffered a stroke after the events, which are alleged in the Indictment. All the conversations intercepted pursuant to the two (2) wiretap warrants occurred months before Mr. Rotunno suffered his stroke. As the Court knows from the pretrial detention hearings, the government's case is substantially based on tape-recorded conversations derived from the two (2) wiretaps, and consentually recorded conversations in the spring of 1999. Mr. Rotunno must be able to remember the conversations and their context to effectively confront the evidence at trial. His memory loss prevents him from doing so.

4. Additionally, Drs. Hyman and Selevan opine that Mr. Rotunno has a problem concentrating for a long period of time. If asked to concentrate for more than four (4) hours, he gets headaches, looses focus and looses concentration. This condition, along with the medical conditions discussed below, impact on and directly affect the trial schedule.

5. Mr. Rotunno's health problems are not new to this Court. At his initial pretrial detention hearing, Mr. Rotunno apprised the Court and the government of his health problems. James Trezza, M.D., a cardiologist and specialist in internal medicine, is Mr. Rotunno's regular treating physician. Mr. Rotunno suffers from arteriosclerotic heart disease, diabetes, hypertension (high blood pressure) and hyperlipidemia (elevation of fats in the blood stream). He

had coronary by-pass surgery and within the past year suffered a stroke. His current medications include Glucophage 300 milligrams twice a day (diabetes), pradin 2 milligrams three times per day (diabetes), norvasc 5 milligrams twice a day (high blood pressure), pravachol 20 milligrams once at bedtime (cholesterol), and plavix 75 milligrams once a day (artheroscleriois). His treating physician opined that it is imperative that he take these medications and have frequent medical check-ups.

6. At his second pretrial detention hearing, Mr. Rotunno's long-time treating physician, Dr. Trezza, provided the Court more information regarding Mr. Rotunno's health problems. Dr. Trezza advised the Court that he has suffered for a long time from hypertension. He has a past history of renal calculi (stones in the urinary tract) and cholelithiasis (gallstones) with surgical removal. He suffers from peripheral vascular insufficiency (vascular disease of the extremities such as the legs and feet) and has been evaluated for angiography and balloon dilation of the iliac vessels. A prior stress test revealed that one area of his heart was not receiving blood during exercise.

7. Dr. Trezza advised the Court that Mr. Rotunno needs the following diagnostic tests and/or evaluations. He is presently due for a repeat thallium and/or adenosine and/or cardiolite cardiac study. He is due for evaluation of his peripheral vascular insufficiency (blood flow to his legs and feet). He is due for a neurological re-evaluation regarding his stroke. He is due for an evaluation for the present status of his hyperlipidemia (elevation of fats in the blood stream) and diabetes mellitus (blood sugar).

8. Mr. Rotunno's medical records, documenting his health problems, were previously submitted under seal to the Court and the government; he incorporates by reference those records.

3

9. Since his incarceration, Mr. Rotunno's has experienced health problems. His blood pressure is high. His blood sugar level is high (220). He has suffered dizziness. He is experiencing pain and numbness in his legs and feet, which is consistent with peripheral vascular insufficiency. Regarding this lack of blood flow, Mr. Rotunno previously had a device surgically implanted in his legs to assist the blood flow; he is suppose to be re-evaluated if he experiences problems. Mr. Rotunno was previously apprised that if the blood flow in his legs deteriorated that he might have to undergo amputation.

## Legal Argument

Mr. Rotunno's memory loss, and his present health problems have adversely impacted his ability to prepare his defense. Mr. Rotunno has established a sufficient predicate for the Court to order an independent evaluation of Mr. Rotunno's memory loss to determine whether it prevents him from effectively assisting his counsel in the preparation of his defense, and whether his memory loss prohibits him from effectively confronting the evidence against him.

Mr. Rotunno renews his motion for a medical severance pursuant to the Sixth Amendment to the United States Constitution and Fed.R.Crim.P. 14. Mr. Rotunno asserts that his memory loss and his medical disabilities -- including arteriosclerotic heart disease, a stroke, diabetes, hypertension (high blood pressure) and hyperlipidemia (elevation of fats in the blood stream) and high cholesterol -- require a severance.

The decision regarding a medical severance is committed to the sound discretion of the trial court. *Bernstein v. Travia, 495 F.2d 1180, 1182 (2d Cir. 1974)*; *United States v. Knohl, 379 F.2d 427, 437 (2d Cir.)*, cert. denied, *389 U.S. 973, 19 L. Ed. 2d 465, 88 S. Ct. 472 (1967)*. The case setting forth the standards to guide the exercise of that discretion is *United States v. Doran, 328 F. Supp. 1261, 1263 (S.D.N.Y. 1971)*. The Southern District of Florida has applied the *Doran*

analysis. *United States v. Goldstein, 633 F.Supp. 424, 427 (S.D. Fla. 1986).* In *Doran*, the court suggested five factors which should be considered in making that decision: (1) the medical evidence; (2) the defendant's activities "outside the courthouse"; (3) the possibility of measures "to minimize the risks to defendant's health in subjecting him to trial"; (4) "the temporary or permanent character of the physical problem, since postponement is a relatively easy, bearable and obvious measure for the case of curable impairments"; and (5) the "magnitude and seriousness of the case -- i.e., the degree of loss or injury to the public interest deemed to result from delay or total preclusion of a trial." When a colorable claim of medical dangerousness is presented to the court, the court must carefully investigate the situation, assemble the pertinent data, and then consider the medical evidence as well as the defendant's activities inside and outside the courtroom, the steps being taken to improve the defendant's health, and the measures that can be implemented to reduce medical risks.

A multiple-defendant trial increases the number of trial days, because multiple lawyers must cross-examine the government's witnesses, multiple-lawyers must present evidence for their respective clients, and multiple lawyers must give opening and closing arguments. In a joint trial, Mr. Rotunno must endure the stress of sitting through this additional in-court time regarding matters pertaining to other defendants. Whether a defendant's physical and mental condition is so poor as to require a severance is a difficult determination that carries the responsibility of balancing the unpredictability of the defendant's health against the government's interest in a single, unified trial. A federal criminal trial is by its nature an ordeal for an accused. When the defendant has serious physical and mental problems, the stress of the ordeal should not be exaggerated by requiring the defendant to endure a long multi-defendant trial. The stress can be minimized by a specially-structured single trial as set forth below.

5

In addition to his heart condition, circulatory problems and diabetes, Mr. Rotunno suffers headaches, loss of focus and loss of concentration after four (4) hours. His trial should be severed and scheduled as follows: (1) that the trial be held 4 days per week,[1] (2) that the normal trial day be abbreviated to a 4-hour session,[2] (3) that there be continuous monitoring of his coronary condition, his blood sugar and his blood pressure during trial, (4) that there be on-the-spot accessibility to medical equipment or medications relating to his medical conditions, (5) that an emergency medical vehicle be parked in the courthouse garage during trial sessions, and (6) that there be at least a licensed physician's assistant, paramedic or registered nurse trained in emergency medicine present in the courtroom during court sessions.

## Conclusion

Mr. Rotunno prays the Court grants the relief requested.

## Certificate of Service

I HEREBY CERTIFY that a true and correct copy of the foregoing was delivered by mail and/or faxed this 11th day of September 2000 to:

Paul F. Schwartz, Esq.
Assistant United States Attorney
500 East Broward Boulevard, Suite 700
Fort Lauderdale, FL 33394
(954-356-7336)

---

[1] This would give Mr. Rotunno 3 days per week to rest and prepare his case.

[2] Because of his health problems, it is necessary to incarcerate Mr. Rotunno at FDC, which has a medical staff. During trial, Mr. Rotunno will still have to be held at FDC; he cannot be held at the Fort Lauderdale City Jail, because it does not have a medical staff. When defendants are in trial in Fort Lauderdale and incarcerated at FDC, the procedure is to get them up at approximately 5 a.m. to prepare them for transport to Fort Lauderdale. If Mr. Rotunno is in trial until 5 p.m., over 12 hours of his day will be consumed by the trial. If he tried alone, he would request that his travel schedule be adjusted to minimize the amount of time he is in transit.

6

Allen Kaufman, Esq.
2900 North Dixie Highway, Suite 201
Oakland Park, FL 33334-2666
(954-563-6813)

William Norris, Esq.
3225 Aviation Avenue, Suite 300
Coconut Grove, FL 33133
(305-285-0699)

Dennis R. Bedard, Edq.
1717 N. Bayshore Drive, Suite 102
Miami, FL 33132
(305-530-9587)

James M. Stark, Esq.
524 S. Andrews Avenue, Suite 304N
Fort Lauderdale, FL 33301
(954-768-0738)

Martin Bidwell, Esq.
Assistant Federal Public Defender
101 N.E. Third Avenue, Suite 202
Fort Lauderdale, FL 33301
(954-356-7556)

Simon T. Steckle, Esq.
701 Brickell Avenue, Suite 3260
Miami, FL 33131
(305-536-6495)

Theodore Klein
800 Brickell Avenue, Penthouse Two
Miami, FL 33131-2944
(305-358-4010)

Phillip R. Horowitz, Esq.
12651 S. Dixie Highway, Suite 328
Miami, FL 33156
(305-232-1963)

Raymond Miller, Esq.
400 S.E. Sixth Street
Fort Lauderdale, FL 33301
(954-462-8594)

7

John F. Cotrone, Esq.
509 S.E. 9 Street, Suite 1
Fort Lauderdale, FL 33316
(954-779-7758)

Michael Dutko, Esq.
600 S. Andrews Avenue, Suite 500
Fort Lauderdale, FL 33301
(954-764-5040)

Thomas D. Sclafani, Esq.
200 E. Broward Boulevard, Suite 1210
Fort Lauderdale, FL 33301
(954-524-8590)

Herbert Cohen, Esq.
200 S.E. 6th Street, Suite 205
Fort Lauderdale, FL 33301
(954-766-7969)

R. Michael Hursey, Esq.
305 S. Andrews Avenue, Suite 701
Fort Lauderdale, FL 33301
(954-779-7980)

                H. DOHN WILLIAMS JR., P.A.
                P.O. Box 1722
                Fort Lauderdale, FL 33302
                954-523-5432; 527-5565 (fax)

                By: _____
                     H. Dohn Williams Jr.
                     Fla. Bar # 0166087

e:\clients\rotunno\memoryloss.1