UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO. 00-6154-CR-DIMITROULEAS

UNITED STATES OF AMERICA,

Plaintiff,

vs.

JOSPEH ROTUNNO, et al

Defendants.
_______________________________/



**REPLY TO GOVERNMENT'S RESPONSE TO THE DEFENDANT'S MOTION TO SUPPRESS INTERCEPTION OF WIRE COMMUNICATIONS, INCLUDING LEGAL ARGUMENT**

COMES NOW the Defendant, Joseph Rotunno (Mr. Rotunno), by and through the undersigned attorney, and pursuant to *18 U.S.C. § 2518*,[1] and the Fourth, Fifth, Sixth and

---

[1] *18 U.S.C. § 2518* provides:

> (9) The contents of any wire, oral, or electronic communication intercepted pursuant to this chapter [*18 USCS §§ 2510* et seq.] or evidence derived therefrom shall not be received in evidence or otherwise disclosed in any trial, hearing, or other proceeding in a Federal or State court unless each party, not less than ten days before the trial, hearing, or proceeding, has been furnished with a copy of the court order, and accompanying application, under which the interception was authorized or approved. This ten-day period may be waived by the judge if he finds that it was not possible to furnish the party with the above information ten days before the trial, hearing, or proceeding and that the party will not be prejudiced by the delay in receiving such information.
>
> (10) (a) Any aggrieved person in any trial, hearing, or proceeding in or before any court, department, officer, agency, regulatory body, or other authority of the United States, a State, or a political subdivision thereof, may move to suppress the contents of any wire or oral communication intercepted pursuant to this chapter [*18 USCS §§ 2510* et seq.], or evidence derived therefrom, on the grounds that—
>
> (i) the communication was unlawfully intercepted;



Fourteenth Amendments to the United States Constitution, and replies to the government's response to his motion to suppress any and all interceptions of wire communications and evidence derived there from. Mr. Rotunno replies as follows:

**Legal Argument**

**Authorization per *18 U.S.C. § 2516***

Applying the standard of review that Title III must be strictly construed in favor of the public at large, and against the government, Title III provides that an interception of wire communications must be authorized by specifically enumerated officials with the United States Department of Justice. Aside from the statutorily designated officials, Attorney General Janet Reno designated other officials to authorize applications for wire interceptions.

October 16th Wiretap Warrant:

The "four corners" of the original wiretap documents revealed that the application for the wiretap warrant presented to Judge Ferguson on October 16, 1998, did not contain proof that one of the enumerated officials authorized the application for the wiretap warrant. Instead it contained proof that an unauthorized official, Frederick Hess, approved the application for the

---

> (ii) the order of authorization or approval under which it was intercepted is insufficient on its face; or
> (iii) the interception was not made in conformity with the order of authorization or approval.

Such motion shall be made before the trial, hearing, or proceeding unless there was no opportunity to make such motion or the person was not aware of the grounds of the motion. If the motion is granted, the contents of the intercepted wire or oral communication, or evidence derived therefrom, shall be treated as having been obtained in violation of this chapter [*18 USCS §§ 2510* et seq.]. The judge, upon the filing of such motion by the aggrieved person, may in his discretion make available to the aggrieved person or his counsel for inspection such portions of the intercepted communication or evidence derived therefrom as the judge determines to be in the interests of justice.

wiretap warrant. To make matters worse, Hess himself did not sign the document. The authorization memorandum was signed by someone else, who then placed her initials next to the signature indicating that she had signed the authorization memorandum for Frederick Hess.[2] If the judge had properly reviewed the wiretap documents with a critical eye, he would have discovered this glaring error.

*United States v. London, 66 F.3d 1227 (1st Cir. 1995)*, is the case most factually similar to our case. The government attached to its initial wiretap application the first page of a two-page authorization memorandum prepared by William Weld, the Assistant Attorney General in charge of the Criminal Division, who was authorized to approve applications for wiretap warrants. The second page was a second page of a cover letter signed for Weld by the none other than Frederick Hess, who performed the same function in our case. Hess, like in our case, was not authorized to approve applications for wiretap warrants. Like in our case, the government argued that there was a "collating error;" page one of Weld's authorization memorandum was mixed up with page two of a separate letter written by Hess.

---

[2] Before the unsealing of the original wiretap documents, the government attempted to mislead Mr. Rotunno into believing that Judge Ferguson was presented a memorandum approving the interception of wire communications signed by a person specifically authorized to approve interceptions of wire communications. In a subsequent discovery reply, the government sent Mr. Rotunno the aforstated memorandum with a cover letter that this was a "missing page" giving the impression that there was photocopying omission in the wiretap documents previously supplied to Mr. Rotunno. The cover letter did not state that this missing page was not presented to Judge Ferguson; it did not state that the "missing page" was not appended to the original wiretap documents. **After sending this cover letter with the "missing page," the government objected to the unsealing and inspection of the original wiretap documents.**

While the "missing page" appears to be from an official designated to approve an interception of wire communications, there are glaring irregularities. **It was not signed by the purported author of the memorandum, James K. Robinson. It was not signed by anyone. Some unidentified third party affixed the rubber stamp signature of another official. The face of the "missing page" reflects that some unidentified person after the close of the regular business day affixed the official's rubber stamped signature when the official was out of the office.** (emphasis added)

Like Mr. Rotunno, the defendant raised a "four corners" argument; the defendant argued that the reviewing court was limited to a "facial analysis" of the authorization. In upholding the wiretap warrant, the court did not go beyond the "four corners" of the application. The court noted that Weld signed the first page of the authorization memorandum. "London's argument hinges entirely on the fact that Hess signed on behalf of Weld the second page of the miscollated authorization papers that were attached to the interception application. What it neglects to take into account, however, is that Weld signed the first page, which states at the top that it is a memorandum for 'William F. Weld, Assistant Attorney General, Criminal Division.'" *Id. at 1232,1233.*

**In our case, the authorization memorandum was purportedly prepared by Robinson. In our case, the authorization memorandum indicated that Robinson approved the application for the wiretap warrant. Unlike in *London*, Robinson did not sign the first page of the authorization memorandum. In fact, according the "missing page," Robinson did not approve the application for the wiretap warrant. Instead, it was allegedly approved by DiGregory.** (emphasis added)

The government wants the court to go beyond the "four corners" of the application to correct the error. The government has cited cases outside the Eleventh Circuit where courts have gone beyond the "four corners" of the wiretap application to resolve issues relating whether the government had proper authorization to obtain a wiretap warrant.

In *United States v. Citro, 938 F.2d 1431 (1st Cir. 1991)*, the authorization memorandum reflected that it was from Edward Dennis, Assistant Attorney General, Criminal Division. The document contained Dennis' signature line, but it was signed for Dennis by the stamped signature of John C. Keeney, Deputy Assistant Attorney General, Criminal Division. Assistant

Attorney General Dennis and Deputy Assistant Attorney General Keeney were identified by title, but not by name in the Attorney General's designation order.

The defendant argued that 18 U.S.C. § 2516 required that the Attorney General's designation order specifically designate by name the persons authorized to approve an application for a wiretap warrant. The court held the Attorney General's designation of individuals by title was sufficient. **Mr. Rotunno did <u>not</u> raise this issue. The defendant in *Citro*, did not raise the issue of the "signature stamp."** The court did not rule on this issue. (emphasis added)

*United States v. Smith, 726 F.2d 852 (1st Cir. 1984)*, concerned a statutory interpretation of Title III as it related to the Massachusetts wiretap statute – whether an *assistant* district attorney was authorized to approve an application for a wiretap warrant. The assistant district attorney said he had authorization from the district attorney, but there was no signed documentation. The court, in allowing the government to go beyond the "four corners" of the application, reasoned that lack of such documentation was not necessarily fatal. The court wrote, "(a)lthough the authorization process portrayed in these documents may comply with Title III, the (trial court) did not make a particularistic inquiry into this matter...**We think that defendants should have some opportunity to test the sufficiency of the government's documentation** and that the government should have an opportunity to try to remedy any perceived deficiency." *Id. at 860.*

**In our case, Mr. Rotunno should have the opportunity to test the sufficiency of the government's documentation (i.e. the affixing of DiGregory's rubber stamped signature to the "missing page" of the authorization memorandum).** (emphasis added)

In *United States v. Traitz, 871 F.2d 368 (3rd Cir. 1989)*, the court authorized a wiretap warrant, and then issued four (4) orders that extended the wiretap. The second order was missing page three when it was signed by the judge. The issue on appeal was whether the absence of page three and the information contained thereon rendered the order facially insufficient and therefore invalid. Apparently, page three of the order related to the findings that normal investigative procedures have been unsuccessful and that there was probable cause for the extension of the wiretap warrant. The defendants did not assert that the judge did not read and review affidavit in support of the application for the wiretap warrant. There was no suggestion that the affidavit in support of the wiretap warrant was insufficient or improper. The affidavit addressed the failure of normal investigative procedures and probable cause for the extension. The court reasoned that in determining whether the judge properly performed his function the court should look to the application and affidavit in support of the wiretap warrant, as opposed to the contents of the order. The contents of the order are meaningless, if the underlying facts and documentation do not support it.

In *United States v. Swann, 526 F.2d 147 (9th Cir. 1975)*, the court allowed the government to go beyond the "four corners" of the application for the wiretap warrant. The application for the first wiretap warrant indicated that Assistant Attorney General Wilson approved the application. In fact, the Attorney General himself approved the application, and Wilson's name was signed to the application by his deputy assistant. The applications for the second and third wiretap warrants were personally approved by the Attorney General. The application indicated that Acting Assistant Attorney General Petersen approved the application. Acting Assistant Attorney General had in fact reviewed the files himself and signed his own name to the letters authorizing the applications. The defendants did not raise the signature

argument. The defendants argued that 18 U.S.C. § 2516 limited approval to only the "Attorney General or any Assistant Attorney General." In other words, the statute did not authorize an "Acting" Assistant Attorney General to approve an application. The court wrote, "...when the Attorney General has in fact personally approved an application, the statement that another officer had done so is only a minor insufficiency, whether or not the named official had authority to approve the application." *Id. at 149.*

Compare, in our case, within the "four corners" of the application, page one of the authorization memorandum indicates that Robinson is the author of the approval memorandum; however page two indicates that someone signed the page for Frederick Hess. The government has supplied a "missing page" that indicates that Robinson, the purported author of the authorization memorandum, did not sign it. Instead someone affixed the "rubber stamp signature" of DiGregory. In its reply at footnote 7, the government wrote, "(i)n fact, the document...bears the handwritten signature of DAAG DiGregory above that portion of the signature block identifying it as such." The government characterized Mr. Rotunno's allegation that it was a "rubber stamp signature" as being unsupported speculation. Below the signature is what clearly appears to be a rubber stamp. Mr. Rotunno opines that the government should be required to produce the original of the "missing page," so it can be inspected and examined to see if it contains an original signature. As the *Smith* court commented, "(the) defendants should have some opportunity to test the sufficiency of the government's documentation." Additionally, in that the "missing page" indicates that DiGregory authorized the application the night before the judge was presented the application, DiGregory should be examined about his approval and the facts and circumstances regarding his "rubber signature stamp" being affixed to a memorandum purportedly authored by someone else.

*United States v. Vigi, 515 F.2d 290 (6th Cir. 1975)*, again involved the issue of whether an "Acting" Assistant Attorney General, pursuant to 18 U.S.C. § 2516, was one of the persons eligible to approve a wiretap application. The approval memorandum identified "Acting" Assistant Attorney General Petersen as the person who approved the application. The court allowed the government to go beyond the "four corners" of the application and establish that the Attorney General himself made the approval.

*United States v. Acon, 513 F.2d 513 (3rd Cir. 1975)*, also involved the issue of whether an "Acting" Assistant Attorney General, pursuant to 18 U.S.C. § 2516, was one of the persons eligible to approve a wiretap application. The approval memorandum identified "Acting" Assistant Attorney General Petersen as the person who approved the application. The court allowed the government to go beyond the "four corners" of the application and establish that the Attorney General himself made the approval. The court reasoned that the "four corners" argument applied to the probable requirement, but not to less critical requirements such as authorization. The same issued was dealt with in *United States v. Robertson, 504 F.2d 289 (5th Cir. 1974)*.

In *United States v. Vogt, 760 F.2d 206 (8th Cir. 1985)*, an Assistant Attorney General authorized to approve wiretap warrants gave the prosecutor verbal authorization to obtain a wiretap warrant. The defendant argued that the authorization must be in writing, and the written authorization must be submitted to the judge before commencement of the wiretap. The court found that the telephone authorization satisfied the requirements of 18 U.S.C. § 2516.

*United States v. Quintana, 508 F.2d 867 (7th Cir. 1975)*, dealt with the issue of the Attorney General's executive assistant approving applications for wiretap warrants when the Attorney General was unavailable. The trial court went beyond the "four corners" of the

application, conducted an evidentiary hearing, and ascertained that the Attorney General himself approved the application.

In *United States v. Falcone, 505 F.2d 478 (3rd Cir. 1975)*, the Attorney General's executive assistant affixed the Attorney General's signature to the application for the wiretap warrant. The trial court went beyond the "four corners" of the application, conducted an evidentiary hearing, and ascertained that the Attorney General himself approved the application and directed the executive assistant to sign his name. **Three days later, the Attorney General, himself, entered a file memorandum verifying the verbal authorization he had given to the executive assistant to sign his name.**

November 19th Wiretap Warrant:

The application for the November 19th wiretap warrant also revealed signature irregularities. **The authorization memorandum was purportedly authored by James K. Robinson, a person authorized to approve an application for a wiretap warrant. However, the author, Mr. Robinson, did not sign it; instead some unidentified third party affixed the rubber signature stamp of another official. The face of the authorization memorandum reflects that some unidentified third party, after the close of the regular business day, affixed some other official's "rubber stamp signature" when the official was out of the office.** (emphasis added)

In *United States v. Laff, 365 F. Supp. 737 (S.D. Fla. 1973)*, this Court dealt with the situation of a third-party signing or initialing a wiretap authorization memorandum. The government's authorization memorandum bore the Attorney General's initials. The Attorney General's executive assistant placed the Attorney General's initials on the authorization

memorandum. The executive assistant claimed that he had the Attorney General's oral authorization to sign his initials. This Court, in rejecting that argument, wrote:

> **The fact that (the executive assistant) testified that he acted in the instant case under oral instructions by (the Attorney General) after a long-distance telephone conference with the Attorney General, could not serve to make proper an authorization any more than could a judge's oral instructions to the clerk of the court to sign his name to an Interception Order make that a valid order.** *Id at 740.* (emphasis added)

Compare in our case, some unidentified third party affixed a "rubber stamp signature" of a person authorized to approve an application for a wiretap warrant. It must be presumed that the unidentified third party was not available to sign the application for the wiretap warrant; otherwise, the third-party would have signed their own name. This Court in *Laff* specifically rejected the concept of an unauthorized person signing for an authorized person. The motion to suppress the November 19th wiretap warrant should be granted, without even the necessity of an evidentiary hearing. The best testimony the third party could give is that she was authorized or directed to affix the "rubber stamp signature" of the authorized person in the authorized person's absence.

The courts have disapproved a third party affixing a substitute signature for the attorney who was supposed to sign a document. In a case presently pending before this Court, this Court has disallowed a paralegal signing his employing attorney's name after he was authorized and directed to do so. In that case, the employing attorney approved a pleading that was to be filed in a civil case. The pleading needed to be filed. Because he was away from, or out of the office, after he approved the pleading, he authorized and directed his paralegal to sign his name. This Court found that this conduct violated Rule 11, which provides that pleadings must be signed by an attorney of record. See *John Martin v. Automobili Lamborghini Exclusive, Inc., et al, case no. 98-6621-Civ-Dimitrouleaus, United States District Court, Southern District of Florida.*

In another case in the Southern District of Florida involving the same attorney, the District Court Judge found that it was improper and that it violated Rule 11 for secretary to sign her employing attorney's name to a pleading and to place her initials after the signature indicating that she signed his name. In that case, the attorney drafted and approved a civil complaint. He directed his office to file the lawsuit. When the secretary got to the Clerk's Office, she realized the attorney forgot to sign the complaint. The secretary, with the deputy clerk's knowledge and consent, signed her boss' name and placed her initials next to the signature indicating that she had signed his name. The attorney was sanctioned for this conduct.

In *Kobleur v. Group Hospitalization and Medical Services, Inc. 787 F.Supp. 1444 (S.D. Ga. 1991)*, the attorney of record did not sign several pleadings. Instead, a third party, whose name appeared to be A.M. Hodge signed the name of the attorney by signing the attorney's name and appending "by A.M. Hodge" or "by AMH" to the signature. The court found that this substitute signature procedure violated Rule 11, Fed.R.Civ.P., which provides, "(e)very pleading, motion, and other paper of a party represented by an attorney shall be signed by at least one attorney of record in the attorney's individual name, whose address shall be stated." The court found that this procedure was a clear violation of a simple rule. "Pleadings must be signed by an attorney of record in the case. Period. These pleadings were not." *Id at 1453*. The court fined the attorney and the person he authorized and directed to sign his name.

Rule 11 provides that an <u>unsigned</u> pleading is a nullity. A pleading signed by a person, who is <u>not</u> the attorney of record, is the same thing as an unsigned pleading. It is a nullity until a proper signature is affixed. Likewise, a wiretap authorization memorandum signed by a third party, who is not authorized to approve an application for a wiretap, is a nullity.

In our case, if the Court goes beyond the "four corners" of the application, it must give Mr. Rotunno the opportunity to test the sufficiency of the government's documentation. **Interestingly both authorization memorandums prepare over 30 days apart were prepare for Robinson signature. But, he never signed either authorization memorandum. Instead, someone else signed in his absence, and both authorization memorandums appear to have rubber stamped signatures of persons who did not prepare the authorization memorandums.** (emphasis added)

***18 U.S.C. § 1955***

The government did not address the issue that 18 U.S.C. § 1955 contains its own probable cause requirement regarding wiretap warrants. Remember, federal law does not punish all illegal gambling. There must be five or more persons involved in the conduct, management, supervision and/or ownership of the gambling business; it must operate for two or more successive days; and it must take in gross revenues in excess of $2000 in any single day. If there is probable cause to believe these criteria have been satisfied, a wiretap warrant maybe obtained to investigate illegal gambling.[3]

The cases cited by the government regarding going beyond the "four corners" of the wiretap application to establish authorization are not applicable. Even those cases hold that the sufficiency of the probable cause must evaluated within the "four corners" of the wiretap

---

[3] *18 U.S.C. § 1955* provides:

> If five or more persons conduct, finance, manage, supervise, direct, or own all or part of a gambling business and such business operates for two or more successive days, then, for the purpose of obtaining warrants for...**interceptions**...probable cause that the business receives gross revenue in excess of $2,000 in any single day shall be deemed to have been established. (emphasis added)

application. In our case, the "four corners" of the affidavit does not show that Mr. Rotunno together with four other persons was conducting an illegal gambling operation.

Remember, the authorization and applications are strictly construed in favor of the accused and against the government. Applying this standard, the probable cause affidavit states: (1) that according to Informant #1 Mr. Rotunno is involved in, or has a controlling interest in two (2) gambling businesses; (2) that Informant #2 said that Mr. Rotunno and members of organized crime were making money from illegal gambling operations; (3) that Informant #3 was involved in a wholesale car business with Mr. Rotunno and that he used money Mr. Rotunno loaned him for the business to gamble with Mr. Scarola and Mr. Polito; (4) that Informant #4 said bettors placed bets with Mr. Polito and that Mr. Rotunno collected the losses; and (5) that Informant #5 said that over 120 days before the wiretap warrant was obtained that he referred bettors to Mr. Capri, and that when his bettors did not pay that Mr. Capri and Mr. Rotunno held him responsible for their gambling debts.

With it broad brush, the government argued that Mr. Rotunno and Mr. Scarola were linked together in the gambling business. But, according the probable cause affidavit, Mr. Scarola and Mr. Rotunno were only linked together in a wholesale car business in which Mr. Scarola was stealing money from Mr. Rotunno. **Mr. Scarola and Mr. Rotunno were not linked together in an illegal gambling business.** (emphasis added)

The application for the wiretap warrant must the identity the persons, if known, whose communications will be intercepted. Both the application for the wiretap and the probable cause affidavit enumerate the persons, who may be intercepted, as Mr. Rotunno, Mr. Polito, Mr. Capri, Mr. Scarola, Mr. Mandel and Mr. Maragni. **While Mr. Mandel and Mr. Maragni are identified as persons who may be intercepted, the five (5) informants did not implicate**

**them in Mr. Rotunno's illegal gambling activities.** Mr. Maragini was characterized as an organized crime figure whose last arrest and conviction was fourteen (14) years ago; **his prior arrest record did not relate to illegal gambling**. Mr. Mandel had no criminal record;[4] he owned a popular sports bar, where patrons, including Mr. Rotunno and Mr. Polito watched sporting events; and during a 32-week period, Mr. Rotunno placed an average of 3 telephone calls per week to this public establishment. (emphasis added)

Excluding the Informants, who are government agents, the probable cause affidavit linked Mr. Rotunno with Mr. Polito and Mr. Capri in illegal gambling activity. Section 1955 requires that the probable cause establish that five or more persons were jointly conducting, financing, managing, supervising, directing or owning all or part of a gambling business. The gambling statute is the only substantive statute with its own specifically enumerated probable cause requirement for obtaining a wiretap warrant. Within the "four corners" of the probable cause affidavit, there are not specific facts that Mr. Rotunno, together with four other persons, was conducting an illegal gambling operation. As such, there was insufficient probable cause, or an insufficient predicate for the issuance of a wiretap warrant to investigate illegal gambling. Any and all evidence derived from the October 16th wiretap warrant must be suppressed. Or, in the alternative, if the court determines there was probable cause to investigate the other enumerated crimes, any and all conversations relating to illegal gambling must be suppressed, as well as any evidence derived from those conversations.

**Duration of the Wiretap(s)**

Regarding Mr. Rotunno's request for the progress reports mandated by Title III, which Judge Ferguson ordered produced on the tenth, twentieth and thirtieth days of the intercept

---

[4] Mr. Mandel could not be a convicted felon and hold a Florida liquor license. Mr. Mandel had to undergo a background and fitness investigation to qualify for a Florida liquor license.

period, the government construed Mr. Rotunno's request for the progress reports to be a "passing remark." The request was made during the court-ordered inspection of the original wiretap documents at the FBI office in Miami. When it was discovered that the progress reports were not with the original documents, the request was made. The government's response was that they were protected by the work product doctrine, and therefore not discoverable, unless the court ordered them produced. Mr. Rotunno's counsel was not at the FBI office to engage in idol conversation, or to merely make passing remarks. Mr. Rotunno's counsel was present to inspect documents pertinent to his motion to suppress.

Mr. Rotunno has been denied factual information relating to whether the October 16th wiretap should have terminated in less than thirty (30) days, because the government had attained the authorized objective. Mr. Rotunno has been denied factual information relating to whether the October 16th wiretap should have been extended, because the government had attained the authorized objective. Mr. Rotunno has been denied factual information relating to whether the November 19th extension of the wiretap should have been terminated in less than thirty (30) days, because the government had attained the authorized objective. This Court should order disclosure of the documents, and allow Mr. Rotunno to supplement his motion on this issue if he deems it appropriate.

**Minimization**

Every interception of wire communications "shall be conducted in such a way as to minimize the interception of communications not otherwise subject to interception under this chapter [*18 USCS §§ 2510* et seq.]." *18 U.S.C. § 2518(5)*. The government's reply to Mr. Rotunno's minimization challenge is – we do not have to be perfect, but take our word that we

exercised enough self control. Mr. Rotunno presented examples that were readily available. Without inspection of the proper documentation, Mr. Rotunno faces an impossible burden.

Generally, during the interception, the government maintains a chronological log or listing of all the calls made from, or received by the telephone that is the subject of the interception (hereinafter referred to as "logs"). These logs include notations regarding the time, date, duration and subject matter of the conversation. If the conversation is a non-relevant call, or a call not subject to interception (i.e. such as a privileged communication with an attorney), the log reflects the call was minimized and not recorded. The government has not provided any logs and/or proof of minimization. Mr. Rotunno wants more than the government's word; he wants the government's logs made contemporaneous with the wiretap, which should reflect the amount of minimization.

**Conclusion**

Mr. Rotunno prays that the Court grant the relief requested.

**Certificate of Service**

I HEREBY CERTIFY that a true and correct copy of the foregoing was delivered by mail and/or faxed this 22 day of September 2000 to:

Paul F. Schwartz, Esq.
Assistant United States Attorney
500 East Broward Boulevard, Suite 700
Fort Lauderdale, FL 33394
(954-356-7336)

Allen Kaufman, Esq.
2900 North Dixie Highway, Suite 201
Oakland Park, FL 33334-2666
(954-563-6813)

William Norris, Esq.
3225 Aviation Avenue, Suite 300
Coconut Grove, FL 33133
(305-285-0699)

Dennis R. Bedard, Edq.
1717 N. Bayshore Drive, Suite 102
Miami, FL 33132
(305-530-9587)

James M. Stark, Esq.
524 S. Andrews Avenue, Suite 304N
Fort Lauderdale, FL 33301
(954-768-0738)

Martin Bidwell, Esq.
Assistant Federal Public Defender
101 N.E. Third Avenue, Suite 202
Fort Lauderdale, FL 33301
(954-356-7556)

Simon T. Steckle, Esq.
701 Brickell Avenue, Suite 3260
Miami, FL 33131
(305-536-6495)

Theodore Klein
800 Brickell Avenue, Penthouse Two
Miami, FL 33131-2944
(305-358-4010)

Phillip R. Horowitz, Esq.
12651 S. Dixie Highway, Suite 328
Miami, FL 33156
(305-232-1963)

Raymond Miller, Esq.
400 S.E. Sixth Street
Fort Lauderdale, FL 33301
(954-462-8594)

John F. Cotrone, Esq.
509 S.E. 9 Street, Suite 1
Fort Lauderdale, FL 33316
(954-779-7758)

Michael Dutko, Esq.
600 S. Andrews Avenue, Suite 500
Fort Lauderdale, FL 33301
(954-764-5040)

Thomas D. Sclafani, Esq.
200 E. Broward Boulevard, Suite 1210
Fort Lauderdale, FL 33301
(954-524-8590)

Herbert Cohen, Esq.
200 S.E. 6th Street, Suite 205
Fort Lauderdale, FL 33301
(954-766-7969)

R. Michael Hursey, Esq.
305 S. Andrews Avenue, Suite 701
Fort Lauderdale, FL 33301
(954-779-7980)

H. DOHN WILLIAMS JR., P.A.
P.O. Box 1722
Fort Lauderdale, FL 33302
954-523-5432; 527-5565 (fax)

By: ______________________
H. Dohn Williams Jr.
Fla. Bar # 0166087

e:\clients\rotunno\suppresswire.lreply